## BACHMAN ET AL. *v.* WATERMAN.

[No. 9,959.   Filed November 26, 1918.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injury
   Arising Out of and in Course of Employment.*—An injury is
   received in the course of the employment when it is suffered while
   the workman is doing what he was hired to do and it arises out
   of the employment when it appears that there is a causal con-
   nection between the environments of the employment and the
   resulting injury; and such causal connection is not indicated by
   the mere fact that a workman's employment required him to be
   at a certain place at a certain time, but it must also appear that
   the nature of his employment subjected him at such a place to a
   certain danger, although not foreseen, and that, by reason of
   being subjected to such danger, he was injured. p. 585.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Place of Employment.*—Under the Workmen's Compensation Act, Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918, an employe's place of employment is sufficiently comprehensive to include all the territory that he is required to visit in performing the duties of his employment; and where such duties require him to travel public streets, the perils and hazards incident to travel thereon, such as danger from moving vehicles, become a part of the environment in which he is required to work. p. 585.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Place of Work.—Injury Arising Out of and in Course of Employment.*—Where it was necessary for a salesman to travel the public streets in the performance of his duties, his place of work included such streets as he was required to traverse while doing his work, and an injury received by being struck by an automobile while traversing a public street was an injury by accident arising out of and in the course of his employment, if at the time he was performing the duties of his employment. p. 586.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injury.—Out of and in Course of Employment.—Evidence.*—Where a flour salesman, whose duty it was to solicit orders and telephone them to his employer from his home at the close of the day's work, was struck by an automobile while crossing a public street in the direction of a street car, which would have carried him to his home, and also toward the business establishment of a prospective customer, the accident occurring shortly before the time he usually arrived at his home, such facts were sufficient to warrant the inference that he was crossing the street either to board the street car to return home in order to telephone the day's orders to the employer's office or to solicit an order from the prospective customer, so that he was engaged in his duties at the time of the accident, and the injury was one arising out of and in the course of the employment. pp. 587, 588.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal.—Review.—Presumptions.*—In a proceeding for compensation under the Workmen's Compensation Act, Acts 1915 p. 392, §80201 et seq. Burns' Supp. 1918, it is the province of the Industrial Board to draw legitimate inferences from the facts proved, and on appeal it will be presumed that the board drew those permissible deductions of fact that are in harmony with and support the award. p. 587.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Mary E. Waterman

against Valentine Bachman and another. From an award for applicant, the defendants appeal. *Affirmed.*

*Harvey & Austill* and *Joseph W. Hutchinson,* for appellants.

*Davis, Moore, Cooper, Royse & Bogart,* for appellee.

CALDWELL, J.—Appellants Valentine Bachman and his insurance carrier challenge the sufficiency of the evidence to sustain the finding of facts. There was evidence to the following effect: Bachman operated a flour mill in Indianapolis. On and for two years prior to December 26, 1916, Lee F. Waterman was in his employ as a salesman. The duties of his employment required him to visit grocery stores and various other places of business in Indianapolis and the surrounding territory, for the purpose of taking orders for flour and other mill products, and also for the purpose of making collections for products theretofore sold and delivered. He had regular customers both within and without the city, on whom he was expected to call at stated intervals. It was also a part of his duty to visit others than regular customers and endeavor to take their orders for mill products.

The particular time at which he should call on his customers and prospective customers was left largely to his own judgment and convenience. On Mondays and Tuesdays he usually canvassed certain territory within the city; on other days, territory without the city. As a rule he traveled from place to place and from customer to customer in a small automobile owned and furnished by his employer. When for any reason the automobile could not be used, he

walked or rode on the street cars. On those days when he canvassed within the city, his custom was to phone his orders before six o'clock in the evening from his home to the mill office. This custom was understood by Bachman's bookkeeper, whose duty it was to receive such orders. The office closed at six o'clock. Waterman lived on East Sixteenth street. It required about twenty minutes to travel on the cars from the point where he was injured, as hereinafter described, to his home. From such point he could have reached his home over either the Central avenue or the College avenue line.

On the afternoon of December 26, 1916, he visited a number of customers in the north central part of the city, taking orders and making collections. The automobile which he had been using was out of repair, and he therefore proceeded on foot. At 4:30 p. m. he visited Maloy's grocery on North Alabama street, taking an order and making a collection. He left Maloy's at about 4:50 and proceeded about two blocks to the intersection of Michigan and New Jersey streets with Massachusetts avenue. Michigan street extends east and west; New Jersey street, north and south; Massachusetts avenue, northeast and southwest. At about 4:55 p. m., Waterman reached a point on the northwest side of Massachusetts avenue immediately west of the intersection. He thereupon started southward across the avenue. A College avenue car, headed northeast towards his home, stood in Massachusetts avenue just west of the intersection, receiving and discharging passengers. On the southeast side of Massachusetts avenue is Lowe's grocery. Bachman's bookkeeper testified that she did not remember that any orders had ever been received from

Lowe's, but that money had been received from there. There were a number of groceries in the vicinity of the intersection, the proprietors of which were possible customers. As Waterman proceeded across the avenue, he was going in the direction of the College avenue car, and also in the direction of Lowe's grocery. It was observed that he proceeded hurriedly, giving certain witnesses the impression that he was hastening to catch the car. His apparent haste, however, possibly may be accounted for by another circumstance: As he started across the avenue two automobiles were approaching from the northeast, the first at a rapid rate of speed, near the curb; the second following near the center of the avenue. It was apparently necessary for him to hasten to avoid being struck by the first automobile. As he hastened out from in front of it, he was struck by the second, near the front end of the College avenue car. As a consequence he suffered injuries from which he died in a few days. Appellee was his dependent wife, and is now his widow. He had not phoned to the mill office his orders for the day. Bachman's bookkeeper waited after closing time to receive such orders, but, by reason of the accident, no message conveying them was transmitted or received. Several days after the accident a book found on Waterman's person, containing the orders and an account of collections, was delivered at the office. There was evidence that Waterman, when canvassing in the city, always phoned his orders from his home, and that it was his custom to reach his home in time to perform that duty before the office closed at six o'clock. There was no direct evidence indicating his immediate purpose in crossing the avenue. Whether he was proceeding

to call on other customers, or prospective customers, rather than endeavoring to catch the car for the purpose of going home is left to inference.

Appellants contend that under the evidence it does not affirmatively appear that the accident which resulted in Waterman's death arose out of or in the course of his employment.

This court is committed to the following doctrines: That an injury is received in the course of the employment when it is suffered while the workman

1. is doing what he was hired to do; that it arises out of the employment when it appears that there is a causal connection between the environments of the employment and the resulting injury; that such causal connection is not indicated by the mere fact that a workman's employment required him to be at a certain place at a certain time, and while there he was injured, but it must appear also that the nature of his employment subjected him at such place to a certain danger, although not foreseen, and that, by reason of being subjected to such a danger, he was injured; that under the Workmen's Compensation

2. Act an employe's place of employment is sufficiently comprehensive to include all the territory that he is required to visit in performing the duties of his employment; that, where the duties of his employment require him to travel public streets, the perils and hazards incident to travel thereon, such as the danger of coming in contact with moving vehicles, become a part of the environment in which he is required to work. *In re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142; *In re Betts* (1918), 66 Ind. App. 484, 118 N. E. 551.

It was necessary for Waterman to travel the public

streets in doing the work which he was hired to do. It results that his place of work included such public streets as he was required to and did traverse while doing such work. Since vehicles of conveyance also continuously pass to and fro along the public streets, the passage of such vehicles with the consequent peril became an ever-present incident of his employment, and constituted a part of the circumstances in the midst of which he was required to work. While traversing a public street he received his fatal injuries by coming in contact with such a vehicle. If at the time the duties of the day under his employment had not been completely performed, but on the contrary, he was still doing the work he was hired and expected to do, if in his employer's interest he was proceeding to call on a customer, or prospective customer, or if he was moving to wind up his day's work in a manner expressly or tacitly required and expected by his employer, then it follows that he was injured by an accident arising out of and in the course of his employment. See the following: *In re Harraden, supra; Beaudry* v. *Watkins* (1916), 191 Mich. 445, 158 N. W. 16, L. R. A. 1916F 576; *Globe Indemnity Co.* v. *Industrial Acc. Comm.* (1918), 36 Cal. App. 280, 171 Pac. 1088; *Putnam* v. *Murray* (1916), 174 App. Div. 720, 160 N. Y. Supp. 811; *Kunze* v. *Detroit, etc., Co.* (1916), 192 Mich. 435, 158 N. W. 851, L. R. A. 1917A 252; *Bett* v. *Hughes* (1914), 8 B. W. C. C. 362; *Pierce* v. *Provident, etc., Supply Co.* (1911), 4 B. W. C. C. 242; *M'Neice* v. *Singer, etc., Machine Co.* (1910), 4 B. W. C. C. 351; *Refuge Assurance Co.* v. *Millar* (1911), 5 B. W. C. C. 522.

Decedent completed his business with a customer

at about 4:50 p. m.   Five minutes later he started across the avenue.   His purpose in so doing, 4. and consequently his exact relation to his daytime duty of canvassing for orders, are somewhat uncertain.   The circumstances would seem to be sufficient, however, to justify some deduction of fact.   Since he was moving in the direction of a standing street car, which would have carried him to the vicinity of his home, had he embarked on it, perhaps it might reasonably be implied that such was his intention, and consequently that he had completed his canvassing for that day.   But, assuming that the situation would justify such a deduction, if made by the proper tribunal, there is another equally or more reasonable.   Thus about an hour yet remained before the time at which he usually arrived at his home.   About twenty minutes were required to make the trip.   While he was going in the direction of the standing car, he was going also in the direction of the place of business of a prospective customer, perhaps a customer, since money had been received from that place.   Other prospective or possible customers were in the vicinity.   Under the circumstances we believe the inference to be reasonable that he was still engaged in the canvassing duties of the 5. day.   It is the province of the board to draw legitimate inferences from facts proved.   Of permissible deductions of fact, we must assume that the board drew those that are in harmony with and that support the award.   See *Kunze* v. *Detroit, etc., Co., supra.*

Moreover, assume that Waterman had completed his canvassing for the day, and that it was his inten-

tion to board the street car for the purpose of being carried to his home: He had taken a number of orders that day, as evidenced by memoranda found on his person after the accident. These orders had not yet been phoned in to the office of his employer. It was his custom, possibly for purposes of business privacy, to perform this duty after he arrived at home. It was also his custom to reach his home to that end, and that he might report his orders before the office closed at six o'clock. His employer knew of such custom, was satisfied with and relied on it, and at least tacitly required that it be followed. On such assumption it appears that, while Waterman had completed the more substantial labors of the day, a further duty to his employer and incident to the employment remained undischarged. He was injured while proceeding in the customary way to the performance of such duty. Under the facts this case is not governed by those decisions wherein it appears that a workman was injured while returning from or going to his place of work, the day's duties being completed or not yet commenced, but rather by that other line, wherein the day's service in its general scope being completed, there yet remains some other incidental duty, the workman being injured while performing it. In such cases it is held that the injury arises out of and in the course of the employment. Among cases that might be cited see the following: *Papinaw* v. *Grand Trunk R. Co.* (1915), 189 Mich. 441, 155 N. W. 545; *Duffield* v. *Peers* (1916), 32 D. L. R. 339; *City of Milwaukee* v. *Althoff* (1914), 156 Wis. 68, 145 N. W. 238, L. R. A. 1916A 327; *Matter of Grieb* v. *Hammerle* (1918), 222 N. Y. 382, 118 N. E. 805.

This court has held that an injury received by a switchman after he had completed his hours of active service, and while he was proceeding to perform the incidental duty of registering out, was suffered in the course of his employment. *Inland Steel Co. v. Lambert* (1917), 66 Ind. App. 246, 118 N. E. 162.

The Duffield case, *supra*, is to the effect that a sales agent, who, while delivering his employer's goods, traveled from place to place by means of a horse and conveyance provided by the employer, is acting within the scope of his employment when taking the horse to the stable after the completion of the day's work.

The evidence is sufficient to sustain the finding. Award affirmed, with five per cent. damages as provided by act of 1917. Acts 1917 p. 154, §8020q2 *et seq.* Burns' Supp. 1918.

Note.—Reported in 121 N. E. 8. See under (3, 4) L. R. A. 1916A 314, 1917D 114, 1918F 911.