## OTTO WOLD, AS GUARDIAN OF THE ESTATE OF EVELYN WOLD, MINOR v. CHEVROLET MOTOR COMPANY OF MINNESOTA, INCORPORATED.[1]

October 8, 1920.

No. 22,036.

**Workmen's Compensation Act.**

1. Defendant's employee, whose duties required him to visit its local agents or dealers in the state and get in personal contact with them, was killed when a sheriff's posse attempted to stop an automobile in which he was riding at the invitation of one of such local dealers. It is *held* that the findings that the injury was accidental, and that it arose out of and in the course of the employment, are sustained by the evidence.

**Same — injury of employee from act not intended to injure him.**

2. The evidence does not call for a finding that the employee was injured by the act of a third person or fellow employee intended to injure him because of reasons personal to him, so as to be excluded by subdivision i, § 8230, G. S. 1913, from compensation.

Upon the relation of the Chevrolet Motor Company of Minnesota, Incorporated, the supreme court granted its writ of certiorari directed to the district court of Yellow Medicine county and the Honorable Richard T. Daly, judge thereof, to review the action of that court in a proceeding brought under the Workmen's Compensation Act by Otto Wold, as guardian of the estate of Evelyn Wold and Dorothy Wold, minor children of Henry O. Wold, employee, against relator, as employer. Affirmed.

*Watson, Sexton & Mordaunt,* for relator.

*Arthur E. Nelson* and *Gerhard Bundlie,* for respondent.

HOLT, J.

In the attempt by a sheriff's posse to stop an automobile in which H. O. Wold was riding, he was accidentally shot and died from the wound. His minor children were awarded judgment against his employer. By certiorari this judgment is attacked.

[1] Reported in 179 N. W. 219.

147 M.—2.

Relator, Wold's employer, manufactures and sells automobiles. Its manager, who hired Wold as salesman, testified that as such salesman it was his duty to visit the local agents or dealers of the company and help them organize their territory and secure subdealers therein; that personal contact with these local agents or salesmen was one of the main points of the road salesman's visits to them; that his duties were manifold, and could be performed at any time night or day; that he was to entertain to a certain extent and it might be good practice to take pleasure rides with the local agents or dealers. Prescott Winter was relator's local dealer at Granite Falls, and he had subdealers at Renville and Clarkfield. On the evening of September 30, 1919, Wold called at Winter's place of business and introduced himself. After some conversation, Winter invited him to take a ride in his car, a large Buick, also his subdealer at Renville who was there and another person, and directed a servant to accompany them. First, a disabled car was towed from another garage to Winter's, then they started west on the road to Clarkfield. Winter was driving and Wold was with him in the front seat. The record is silent as to the purpose of the drive, or as to any conversation in regard thereto with Wold. It appears, however, that the latter expressed a desire to finish his business that night, so that he might leave Granite Falls early the next day. On the trip to Clarkfield Winter's actions indicated mental derangement, but not to such an extent as to cause the four able bodied men to interfere with his driving, even when done at high speed. We may infer from the record that the sheriff at Granite Falls had been informed that a large Buick car had been stolen at Watertown, Minnesota, and was speeding west, and that Winter's action in stopping the occupants of a Ford car, that came up behind the party as they were going to Clarkfield, had been telephoned to the sheriff, for he notified his deputy at Clarkfield to summon aid and intercept the large Buick en route to Clarkfield. The deputy secured a number of men, some of whom were armed, and posted them along the road entering the village from the east. As Winter came along at high speed with the muffler open, the deputy sheriff and his aids sought to stop the car, and, when the command was not heeded some of the men fired, attempting to hit the tires as they had been instructed. A bullet struck Wold, causing his death.

The finding that the injury to Wold was accidental must be sustained,

for there is no evidence that any of the shooters intended to hit the occupants of the car. At most they purposed to puncture the tires, so as to recover the car or apprehend the supposed criminals in charge of it. Nor is there any difficulty in sustaining the finding that the ride to Clarkfield was in the course of Wold's employment, in view of the testimony of Mr. Stimson, relator's manager, as above outlined, and as more clearly brought out by these questions and answers from the record, viz.: "Q. Would you consider it good business for one of your salesmen to at times take a pleasure ride either at his own suggestion or at the suggestion of the local agent, in connection with his work? A. I have oftentimes been out in the field and taken those rides. It is difficult to know whether they are good business or not all the time, sometimes it is necessary and sometimes it is not. * * * A. It is permissible, however, and seems to be the practice. Q. In the event, Mr. Stimson, that in your duties as a salesman—going back to that time—you called upon a local dealer for the first time and you were invited to ride with him, whether upon an investigation trip of any kind or otherwise, would you ordinarily consider it good business to go with him? A. Yes, I would. Q. Would you, Mr. Stimson, consider it a part of a salesman's duty to accept such an invitation from the local agent, whom he had met for the first time, or otherwise? * * * A. I have oftentimes done so myself, and we leave that up to the pleasure of the salesman, that is, up to his own judgment."

Wold being in the course of his employment when riding with Winter and when injured, the conclusion of the trial court that the accidental injury arose out of the employment cannot well be said to lack evidentiary support. Had he received an injury while so riding either in a collision or the overturning of the automobile, whether through the carelessness of the driver or other cause, there could be little doubt but that the accident arose out of the employment. The fast driving, in this instance, the driver's failure to hear or heed the warning to stop, and the conditions created in part by his previous conduct on the trip, caused the sheriff to attempt to stop the car and the accident to Wold resulted. The automobile was an instrumentality contemplated to be used in the performance of the employee's duties. When by the mismanagement or the attempt to manage or control an instrumentality, properly made use of in the employment, an accidental injury results to an employee, the ac-

cident must be held to have arisen out of the employment. Some courts have stated the rule to be that the accident arises out of the employment when it can be said reasonably to have been contemplated as the result of the exposure of the employment. Hewitt's Case, 225 Mass. 1, 113 N. E. 572, L.R.A. 1917B, 249. Even by that rule it may be said that in automobile transportation the risk of being stopped by officers of the law for speeding or other traffic violations is a risk reasonably to be anticipated, for it remains true that drivers of such vehicles often do violate statutes and ordinances.

The claim cannot be sustained that compensation is excluded by the provision that it does "not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment" (subdivision i, § 8230, G. S. 1913), for it is plain on the facts that neither Winter nor any one in the sheriff's posse intended to harm Wold. The cases cited by relator, such as Blake v. Head, 5 B. W. C. C. 303; Murphy v. Berwick, 43 Irish Law Times Reports, 126.; Armitage v. Lancashire Co. 2 K. B. 178 (1902); Mitchinson v. Day Bros. 1 K. B. 603 (1913); Schmoll v. Weisbrod & Hess Brew. Co. 89 N. J. Law, 150, 97 Atl. 723; Walther v. American Paper Co. 89 N. J. Law, 732, 99 Atl. 263; Harbroe's Case, 223 Mass. 139, 111 N. E. 709, L.R.A. 1916D, 933; and State v. District Court of Itasca County, 140 Minn. 470, 168 N. W. 555, were decided upon the principle expressed in the exclusion clause above quoted in our act.

The instant case on this feature is analogous to the one of Foley v. Home Rubber Co. 89 N. J. Law, 474, 99 Atl. 624, where the employee met death in the sinking of the Lusitania. There the court said: "The present case is clearly distinguishable from the cases referred to in which compensation was denied, in that it cannot be properly said here that there was any malicious design on the part of the German naval forces against Foley or any other passenger, and it may be safely assumed that the prime object of the German naval forces was to destroy the enemy's ship and not the lives of its passengers." So we may say here, when the driver failed to stop the car, the main purpose of the sheriff's posse in making use of the guns was to disable the car and not its occupants.

Hewitt's Case, supra, cited by relator, presents a case where a soliciting insurance agent was injured in an automobile accident. The court said: "In the prosecution of the business of soliciting insurance Hewitt was independent. While authorized and expected to go where there was any reasonable prospect of securing a customer, his time and his method of procedure was his own. He might travel on foot, on horseback, by trolley, train or automobile. He might write, telephone or telegraph. He was wholly free as to time, place or weather." Under those circumstances it was held that "the injury cannot be said reasonably to have been contemplated as the result of the exposure of the employment." In the case at bar the employee was engaged as a traveling salesman, and under such cases as State v. District Court of Hennepin County, 141 Minn. 61, 169 N. W. 274, and State v. District Court of Hennepin County, 141 Minn. 348, 170 N. W. 218, we think he was protected when on the trip he was taking.

Judgment affirmed.