KIDDIE KNEAD BAKING COMPANY ET AL. *v.* BOLEN.

[No. 16,206. Filed November 28, 1938. Rehearing denied January 18, 1939.]

132

*James L. Murray,* for appellant.

*Long & Yarlott* and *Frederick Landis, Jr.,* for appellee.

STEVENSON, J.—The appellants in this case, the Kiddie Knead Baking Company and the Lumbermen's Mutual Casualty Company, prosecute this appeal from an award of compensation made to the appellee, Ray Bolen, by a majority of the Industrial Board, for injuries alleged to have been sustained by appellee, Ray Bolen, as a result of an accidental injury which occurred on the 24th day of July, 1937.

The only error assigned by the appellants is that the final award of the full Industrial Board of Indiana is contrary to law.

A study of the briefs of the parties and a review of the evidence heard by the Industrial Board in this case disclose the following facts: the appellee, Ray Bolen, was a salesman employed by the Kiddie Knead Baking

Company of Logansport, Indiana. At the time of his employment and at the time of the injury complained of in this case, he was living with his family at a point about four miles north of Logansport. His work as a salesman for the appellant company consisted of the sale of bakery products to customers along a specified route in a territory north of Logansport. The route traveled by the appellee was approximately 175 miles in length and it was the duty of the appellee to cover this route daily for the purposes of making sales and deliveries of bakery products to the stores and customers along the way. In traveling this route the appellee operated his own truck, paid his own expenses and was paid a salary by the Kiddie Knead Baking Company on a commission basis with a minimum guarantee of $24.00 per week. The appellee, Mr. Bolen, had been working for Kiddie Knead Baking Company on this route for about three months, distributing bread, pastries, rolls and cookies, selling to the customers of the baking company along the route and to any others who might wish to buy. At the time Mr. Bolen started to work for the company, a representative of the baking company went with him over the route to acquaint him with their customers and to give him the necessary instructions as to the conduct of the business. A supervisor also covered the route at various intervals to check the stock and make inquiries as to whether the services were satisfactory.

It was the custom of Mr. Bolen to leave his home early in the morning and drive to the bakery at Logansport, where he would load his truck with the bread and pastries needed for his deliveries on that day. He usually called at the bakery between the hours of 3:00 and 5:00 o'clock in the morning and loaded his truck. The products taken by him each morning were charged to his account by the baking company and he was permitted

to sell the same to anyone on the route who wished to buy at a price fixed by the baking company. At the end of the day it was his duty to report to the baking company the amount of his sales, turn in his cash collected, and return any unsold products. His account was credited with any unsold products returned and at the end of the week he was paid his salary, based upon the volume of merchandise sold. His average weekly wage on a commission basis was about $26.38.

It is disclosed by the evidence that the baking company desired a return of the unsold products and they considered it a part of the job on which the appellee Bolen was employed to return this unsold bread and pastries.

On the afternoon of July 23, 1937, the appellee, Bolen, came home from his route between two and three o'clock with unsold baking products in his truck consisting of cookies, several packages of rolls and 25 loaves of bread. He was suffering from a headache and a cold and asked his wife to check in his sales at the baking company's plant for him. They then went out to the truck and discovered that some repairs were necessary on the truck, and the appellee, Bolen, and his wife drove the truck to a filling station in Logansport some three or four blocks from the baking company's place of business and while the truck was being repaired, Mrs. Bolen took the cash and receipts for the day's business to the baking company's office and delivered them to the bookkeeper with the statement that the bread and pastries left in the truck would be delivered by Mr. Bolen the next morning. This arrangement was satisfactory with the baking company. On the morning of July 24, 1937, Mr. Bolen left his home shortly before four o'clock in the morning and, while on his route to the plant of the Kiddie Knead Baking Company and while driving his truck used by him in the operation of his business,

was struck by a Pennsylvania Railroad train at a public crossing in the city of Logansport. In this accident the appellee, Ray Bolen, received injuries for which the Industrial Board awarded compensation at the rate of $8.80 per week, beginning August 1, 1937, the same to continue so long as the plaintiff continued to be totally disabled not exceeding the period fixed by law.

From this award by the Industrial Board the appellants prosecute this appeal and the only question presented by the record is whether or not the accident and resulting injury arose out of and in the course of the appellee's employment.

The Industrial Board of Indiana has found as an ultimate fact that the injury suffered by the appellee, Bolen, was the result of an accident arising out of and in the course of his employment by the Kiddie Knead Baking Company. If there is any competent evidence to sustain that finding, it is binding upon this court. Likewise, it was within the province of the Industrial Board to determine the ultimate facts in this case and if, in the determining of them, it reached a legitimate conclusion from the evidential facts, this court cannot disturb that conclusion though it might prefer another conclusion equally legitimate. *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293; *Lasear, Inc.* v. *Anderson* (1934), 99 Ind. App. 428, 192 N. E. 762.

The appellants contend that the facts in this case disclose that the appellee's accidental injury did not arise out of and in the course of his employment and contend that the evidence conclusively shows that the appellee's employment had not begun at the time of the accident and for that reason the final award of the full Industrial Board is contrary to law. It becomes pertinent therefore to determine whether the

appellee at the time of the alleged injury was engaged in the performance of a duty owing to his employer or whether or not he was merely on his way to work. As was said by this court in the case of *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 561, 132 N. E. 664:

> " 'If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risk incidental to the streets, the accident arises out of as well as in the course of his employment. . . . The use of the streets by the workman merely to get to or from his work of course stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the perils of the streets the workman can recover for any injury so occasioned.' "

The Industrial Board had evidence before it from which it might have found that on the morning of the accident the appellee was returning to the Kiddie Knead Baking Company unsold bread and pastries from the previous day's business and that it was his duty so to do. On this state of facts this court has held the law to be that:

> "If at any time the duties of the day under his employment had not been completely performed, but on the contrary, he was still doing the work he was hired and expected to do, if in his employer's interest he was proceeding to call on a customer, or prospective customer, or if he was moving to wind up his day's work in a manner expressly or tacitly required and expected by his employer, then it follows that he was injured by an accident arising out of and in the course of his employment." *Bachman* v. *Waterman* (1918), 68 Ind. App. 580, 586, 121 N. E. 8.

This court accordingly cannot say as a matter of law that the appellee, on the trip in question, was not "moving to wind up his day's work in a manner ex-

pressly or tacitly required and expected by his employer." The appellants urgently contend that the mission on which the employee is engaged must be the major factor in the journey or movement and not merely incidental thereto in order to bring such person under the protection of the act. That in the case at bar the appellee was at the time of his journey on the way to work and the return of the bakery products was but an incident of the journey.

In support of this contention, the appellants' counsel invoke the general rule that the act does not apply to employees going to and from their day's work and not in the immediate vicinity of the place of employment. On this question attention is directed to *Clifton* v. *Kroger Grocery & Baking Co. et al.* (1922), 217 Mich. 462, 465, 187 N. W. 380, where the following language appears:

> "This general rule has its full application to common laborers and other employees who work during stated hours at specified places, and when they are through for the day are free to go where they like and to do as they please, with no further responsibility under their employment or duty to perform for their employers until working hours begin the next day, or until they again resume their employment. If in the meantime they are accidentally injured while going somewhere or doing some act wholly for their own benefit, they are not protected by the statute. But that rule does not necessarily apply where the injured employee is yet acting within the scope of his employment, carrying out the orders of his employer, and performing some duty to further the latter's business. Where he was going or what he was doing might also further his own interests, but it would not in itself bar him from recovery." (See also *Standard Oil Co.* v. *Clark* (1932), 44 Ohio App. 211, 184 N. E. 861.

In *Barkman* v. *Meyer* (1934), 12 N. J. Misc. 287, 171 Atl. 536, the injury was held to arise out of and in the

course of the employment where a dairyman employed on a farm, who, after milking each morning, went to his home for breakfast and took home with him two or three dairy pails to be washed and cleaned at his home, and which were returned to the farm later in the day for further milking use, on the morning in question had taken the dairy pails to his home, eaten his breakfast, and, while walking back to the farm, was struck by an automobile and killed. The court said (p. 537) :

> "The contention made in the third point, that the decedent was engaged in no work for his employer, cannot be sustained. It was undisputed that one of the obligations of the deceased's employment was to take home with him after each morning's milking two or three regular dairy pails, to be washed and cleaned at his home; on the fatal morning he carried home with him, besides his 5 quarts of milk, two regular dairy pails, to be washed and cleaned. This service to the master had nothing to do with, and is not to be confused with, the carrying home of the 5 quarts of milk allowed the deceased as a part of his compensation. The washing and cleaning of the milk pails at home, whether done by the deceased or his wife, was a necessary and essential duty to be performed as a part of the contract of employment; and since he was thus obliged to carry these pails to his home, and wash and clean them, the deceased was necessarily engaged in the service of his employer in both going home and coming back, whether riding or walking, whether he carried his milk (or money) compensation with him or not."

It is the opinion of this court that the appellee, Ray Bolen, at the time of his injury was acting within the scope of his employment and discharging regular, daily duties in direct obedience to the terms of the contract of his employment. The return of the unsold bread and pastries was not a casual or unusual service incidentally performed in the employer's interest but a regular and imperative part of his daily duties. Under the general rule relative to performing a service within the scope of

his employment tending to further his employer's interest, it is our opinion that this case falls on the liability side of the line of demarcation. *Clifton* v. *Kroger Grocery & Baking Co., supra; Standard Oil Co.* v. *Clark, supra; Bachman* v. *Waterman, supra.*

The appellants urge in their brief that the final award of the Industrial Board is contrary to law because it is based upon conjecture, guess, and surmise. The appellants contend that there was no evidence presented to show where Ray Bolen was going at the time of the accident

There was evidence in the record to the effect that the place where the accident occurred was along the regular route traveled by the appellee from his home to the Kiddie Knead Baking Company, that this was in the direct route of travel and at the usual time of day for the appellee's trip. The presence of bread and pastries of the Kiddie Knead Baking Company in the appellee's truck immediately following the accident, together with the testimony of Mrs. Bolen that he was returning this bread to the Kiddie Knead Baking Company was evidence sufficient to warrant the finding against the appellant in this contention.

The final award of the Industrial Board is affirmed.