SAM CRITES *v.* CHARLES E. BAKER.

[No. 771A124. Filed December 16, 1971. Rehearing denied January 18, 1972. Transfer denied April 28, 1972.]

*David A. Steckbeck, Steckbeck & Moore,* of Indianapolis, for appellant.

*Robert F. McCrea, McCrea & McCrea,* of Bloomington, for appellant.

SHARP, J.—The sole issue here is whether the award of the Industrial Board of the State of Indiana granting benefits to the Plaintiff-Appellee, Charles E. Baker under the Indiana Workmen's Compensation Act is contrary to law. Both the single hearing member and the full Industrial Board awarded benefits to Appellee.

It is elementary that the factual record in this case must

be considered in the light most favorable to the Appellee. These facts, briefly summarized, indicate that the Appellee, Charles Baker, was an employee of the Appellant and that his duties were to drive one of the Appellant's trucks on the streets and alleys of Bloomington, Indiana. The Appellant had a contract with the City of Bloomington, Indiana, to pick up trash and garbage in the City. The truck which the Appellee had been driving on the date here in question was specially designed and equipped to pick up trash and garbage. On October 11, 1969, the truck driven by the Appellee ran out of gas and came to a stop on the south side of a public street in Bloomington, Indiana, and at that time, said truck was heading in an easterly direction. The Appellee was in the driver's seat of the truck waiting for one of his co-employees to go and bring back a can of gasoline. Between 3:30 and 4:00 o'clock P.M., a school bus approached said truck from the east. At this point, the street is described as being narrow and was barely wide enough for the passage of the school bus past the garbage truck. The Appellee was looking out the open window of the cab watching the bus as it approached and passed when he was struck in the face by an apple thrown by a ten year old boy from the passing school bus. A fellow employee of the Appellee, Ringman Boltinghouse, who was standing near the truck at the time of the incident above referred to, on direct examination described the happening of the occurrence as follows:

"Q. Mr. Boltinghouse, tell the Court about this accident in your own words the way you remember it?

A. Our truck had run out of gas and we had to give it a push to get up a hill and we was sitting in the seat, waiting for one of the boys to bring us gas, and so they brought us gas, but before that, the school bus was coming and Charlie had his head laying over like this against the window with his eyes closed and this boy throwed an apple out of the window of the bus. That's about all I know about it.

Q. Now, Charlie was sitting under the steering wheel of the truck?

A. Yes, sir.

Q. And was the window down on Charlie's side?

A. Yes, sir.

Q. It was open?

A. Yes.

Q. Did you see the object that hit Charlie?

A. Yes, it was an apple.

Q. Did you see it coming, Mr. Boltinghouse?

A. No. The kid throwed it too fast."

Another witness, Charles Clemens, Sr., a cab driver who observed the accident, testified as follows:

"Q. Which direction were you driving on 4th Street?

A. I was going west on 4th.

Q. Did you see a school bus, was there a school bus traveling in front of you, or do you remember?

A. Yes, there was a school bus going in front of me.

Q. The same direction you were?

A. Yes.

Q. Will you just help us by telling the Court and directing your words up there, what you saw happen?

A. It happened so—to me, let me put it in my own words it happened so damn fast, this man fell out of his cab and I went over and helped him with my arm until the emergency wagon could come to him, and I wiped apple off of his face, that is the only thing about it, until the emergency wagon came and got him.

Q. Was he bleeding?

A. That man was bleeding from his ears, nose, eye, bleeding from his mouth. That is the way this man was.

Q. And the emergency police vehicle came and they took him away?

(Yes.)"

It is elementary that this Court will not weigh the evidence and will not substitute its judgment of the factual record for that of the Industrial Board. On appeal, we must consider whether the finding of the Industrial Board rests upon a substantial factual foundation. We will

reverse the award only if we find no substantial factual foundation to sustain the award of the Industrial Board. See *Pollock* v. *Studebaker Corp.*, 230 Ind. 622, 105 N. E. 2d 503 (1951), and *Blue Ribbon Pie Kitchens, Inc.* v. *Long, et al.*, 230 Ind. 257, 103 N. E. 2d 205 (1952). For a recent restatement of these principles in this Court see *Woodlawn Cemetery Association* v. *Graham,* 149 Ind. App. 431, 273 N. E. 2d 546 (1971), and *Davis* v. *Webster,* 136 Ind. App. 286, 198 N. E. 2d 883 (1964). In determining the correctness of the finding of the Industrial Board, this court must accept only the evidence most favorable to the Appellee. See *Woodlawn Cemetery Association* v. *Graham, supra* and *Davis* v. *Webster, supra.*

It has long been held in Indiana that the Workmen's Compensation Act, being remedial in nature, should be liberally construed to accomplish the humane purpose for which it was enacted and accordingly, it should be liberally construed in favor of employees and beneficiaries. Recent decisions of our Supreme Court and of this Court have re-emphasized the demand for this construction. See *Prater* v. *Ind. Briquetting Corp.,* 141 Ind. 349, 251 N. E. 2d 810 (1969) and *Marshall* v. *Tribune Star Publishing Co.,* 142 Ind. 556, 243 N. E. 2d 761 (1968), *Burger Chef Systems, Inc.* v. *Wilson,* 147 Ind. App. 556, 262 N. E. 2d 600 (1970), and *Ind. Toll Road Commission* v. *Bartusch,* 135 Ind. App. 123, 184 N. E. 2d 34 (1963). It is also well-recognized that the words "arising out of" and "in the course of the employment" as used in the Workmen's Compensation Act should be liberally construed to accomplish the humane purposes of the act. See *Hayes* v. *Perry,* 116 Ind. App. 590, 66 N. E. 2d 73 (1946), *The Studebaker Corporation* v. *Jones,* 104 Ind. App. 270, 10 N. E. 2d 747 (1937) and *In re Ayers,* 66 Ind. App. 458, 118 N. E. 386 (1918).

Shortly after the adoption of the Workmen's Compensation Act in Indiana, this court was confronted with a factual situation involving many of the elements present in this case. In laying down certain general principles and guidelines this

Court stated in *In re Harraden,* 66 Ind. App. 298, 118 N. E. 142 (1917) as found in 66 Ind. App. 298, 303:

> "Where the employment of the injured person requires him to be at the place where his injury is received, and he is in fact at such place in pursuance of the discharge of the duties of his employment, *the risk* thereby encountered is *held to be incident to such employment,* though the injury may have resulted from conditions produced by the weather to which persons generally in that locality were exposed. *Where the duties of the employee require him to travel and visit different places in order that he may discharge the duties of his employment, his place of work is thereby enlarged or extended to include all the places to which such employee necessarily goes in discharging the duties of his employment.* While the conditions produced by the weather may in a sense affect all alike in the particular vicinity, yet the fact remains that a person so employed is much more exposed to such hazards than the public generally because of the duties enjoined upon him by his employment and the place or places to which he must necessarily go in the discharge of such duties." (citations omitted) (our emphasis)

Four years later, this Court decided a similar case in which the facts, reasoning and result have a more pointed application to this case. In *Empire Health and Accident Insurance Co.* v. *Purcell,* 76 Ind. App. 551, 561, 132 N. E. 64 (1921) this Court stated:

> "The law as to 'street risks' is well stated in *Matter of Redner* v. *Faber & Son* (1918), 223 N. Y. 379, 119 N. E. 842, where the court quoting from *Dennis* v. *White & Co.,* 1917, App. Cas. (Eng.) 479 said: 'If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risk incidental to the streets, the accident arises out of as well as in the course of his employment. * * * The use of the streets by the workman merely to get to or from his work of course stands on a different footing altogether, but as soon as it is established that the work itself involves exposure to the perils of the streets the workman can recover for any injury so occasioned.'
>
> "It has been held that the risk of an employee being injured when using an automobile for transportation, by and

when being stopped by officers of the law for speeding or other traffic violations is a risk to be anticipated. *Wold* v. *Chevrolet Motor Co.* (1920), 147 Minn. 17, 179 N. W. 219.

"While there must be some causal relation between the employment and the injury, it is not necessary that the injury be one which ought to have been foreseen or expected, but it must be one which after the event, may be seen to have had its origin in the nature of the employment. *Mueller* v. *Klingman* (1919), 73 Ind. App. 136, 125 N. E. 469. A man who is known to be carrying money is a tempting object for criminals to attack and is exposed to dangers and hazards not common to all who travel the streets. *Nisbet* v. *Rayne & Burn* (1910), 2 K. B. 689.

"When one, so situated and employed as was appellee, received an injury by reason of the hazards and conditions surrounding him, it is ordinarily a question of fact as to whether the employment of such person was or was not a contributing proximate cause of the injury. We are of the opinion that the Industrial Board was justified in drawing the inference that appellee's injury arose out of his employment. This conclusion is supported by *Ohio Bldg. Vault Co.* v. *Industrial Board* (1917), 277 Ill. 96, 115 N. E. 149; *Hellman* v. *Manning, etc., Co.* (1916), 162 N. Y. Supp. 335, affirmed in 221 N. Y. 492, 116 N. E. 1051."

The subsequent decisions of this Court and the Supreme Court during the intervening fifty years regarding so-called street risks have been largely a variation on the themes found *In re Harredan, supra* and *Empire Health, supra.*

At approximately the same period of time, Judge Cardozo in *Heidemann* v. *American District Telegraph Company,* 230 N. Y. 305, 130 N. E. 302, 303 (1921) stated:

"The sudden brawl, the 'chance medley' (Blackstone, Comm. book, 4 c. 14; *People* v. *Tomlins*, 213 N. Y. 240, 244, 107 N. E. 496, Ann. Cas. 1916C 916) are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveler, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek, where others were free to shun. The difference is no less real, because a difference of degree. The tourist on his first voyage may go down with the ship, if evil winds

arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home. The night, too, has its own hazards, for watchman and for wayfarer. Death came to Heidemann in the performance of his duty, face to face with a peril to which the summons of that duty called him."

Part of the above quotation from the *Empire Health* case, *supra* was quoted with approval by this Court in *Kiddie Knead Baking Co.* v. *Bolen,* 196 Ind. App. 131, 17 N. E. 2d 477, 479 (1938), *Burroughs Adding Machine Co.* v. *Dehn,* 110 Ind. App. 483, 39 N. E. 2d 499 (1942), and *Indiana Steel Products* v. *Leonard,* 126 Ind. App. 669, 131 N. E. 2d 162 (1956).

Although it is not directly involved in this case, the law of Indiana is settled that an employee may recover Workmen's Compensation Benefits for the increased exposure or ■ risk to the natural elements which arises from a condition of employment. See *E. I. DuPont De NeMours Co.* v. *Lilly,* 226 Ind. 267, 79 N. E. 2d 387 (1948), and *Citizens Independent Telephone Company* v. *Davis,* 121 Ind. App. 20, 94 N. E. 2d 495 (1950).

A number of cases decided by this Court in which the facts, reasoning and result bring them within the ambit of the so-called "street risks" doctrine are *Ind. Steel Prod. Co.* v. *Leonard, Admx., supra, Whaley* v. *Steuben Co. Rural Memb. Corp.,* 139 Ind. App. 520, 221 N. E. 2d 435 (1966), *Kiddie Knead Baking Co.* v. *Bolen, supra, Indiana Toll Road Commission* v. *Bartusch, supra, Burroughs Adding Machine Co.* v. *Dehn, supra, Pittsburg Testing Lab.* v. *Kiel,* 130 Ind. App. 598, 167 N. E. 2d 604 (1968), *Soetje & Arnold* v. *Basney, Inc.,* 218 Ind. 538, 34 N. E. 2d 26 (1941), and *Bachman* v. *Waterman,* 68 Ind. App. 580, 121 N. E. 8 (1918). The last word from our Supreme Court in this area of Workmen's Compensation law is in *Marshall* v. *Tribune Star Publishing Co., supra* in which the denial of benefits by the Industrial Board, affirmed by the Appellate Court, was reversed on transfer

by our Supreme Court. In reversing the decision, Judge Hunter, speaking for the Supreme Court, stated at 243 N. E. 2d 761, 763:

"In the case at bar, we believe that despite this stringent rule it was necessary for the Appellate Court to reverse the award of the Industrial Board. Even when the evidence is viewed most favorably in all respects to the award made by the Full Board, together with all reasonable and logical inferences to be drawn therefrom, it nevertheless appears from the uncontroverted evidence of petitionr's own witnesses that the decedent was required to use his automobile to carry out the duties of his employment, that he was given an expense allowance of $5.00 per week therefor, and that at the time of the collision which caused his death the decedent was enroute *from* his employment with petitioner either to his home or to the dairy where he was employed after 7 o'clock in the morning as a milkman. These necessary findings of fact make irrelevant to the disposition of this case any determination of whether or not the decedent had completed his route of paper drop-offs."

The center of focus in these cases is on the factual nature of the employment and, incidentally, on the nature of the accident. Certainly, there must be a causal connection between the accident and the factual nature of employment. There can be no question about such causal relationship in this case In this case, however, the Appellant has focused all of his attention on the alleged freakish nature of the accident. There is no question that the Appellant was within the scope of his employment and was performing a necessary function of his employment at the time of his injury. The above quoted authorities are well synthesized by Dean Ben F. Small in *Workmen's Compensation Law of Indiana,* § 6.4 at page 121, where it is stated:

"Anyone whose employment subjects him to the dangers of the street or highway is exposed to the risk of injury or death thereon. In such cases, the meaning of employment is sufficiently comprehensive to embrace all the territory which the employee is required to visit in performing the duties of his employment.[62]

"There never has been any question as to the right to compensation where the employment was one which required the workman to be on the street or on the sidewalk at nearly all times. In those cases, courts could say that the street, highway, or sidewalk was the workshop of the employee and readily grant compensation to such workmen as traveling salesmen, teamsters, delivery boys, etc. However, by the better modern view, it is no longer necessary to show that the road is the workshop. One who is occasionally on the street or sidewalk may be exposed to just as grave danger while there as one who spends his entire work time there. Thus, it would seem that the distinction between the two types of workmen is no longer tenable.[63]

"Of course, the greatest risk to any street or highway traveler is that of colliding with or being struck by some moving automobile or other vehicle. Hence, compensation has been given for the death of a traveling salesman struck by a streetcar as he was seeing to his accounts,[64] the death of another salesman while he was going to board a streetcar either for the purpose of going home to call in the day's orders, or to solicit a prospective customer,[65] and the death of another salesman in a collision with a train while returning in a company car to his employer's factory with some defective machine parts.[66] Bad weather constitutes almost as grave a peril to a traveling man as the risk of collision with other vehicles. Hence, compensation was given for the death of a salesman from a cerebral hemorrhage induced by shock after an automobile accident on an icy highway.[67]

"The pale of the employment includes everything reasonably essential to the carrying on of the employment. So, compensation was given where a workman was injured on his way back to his coal wagon from a saloon where he had gone to telephone his employer.[68] . . ." (Footnotes omitted.)

In the 1968 Cumulative Supplement to Small's *Workmen's Compensation Law of Indiana* prepared by Geoffrey Segar, in the section relating to Street and Sidewalk hazards, it is stated:

"With the American automobile threatening to out-do its driver in numbers, the highway-street-sidewalk-risk has become so much a part of the natural environment that it is often next to impossible to separate the employment accident from the personal accidents occurring daily. To

work and back, to lunch, to union meeting, to the foreman's funeral—all have something to do with the employment, but they're personal too. Once an accident has occurred, any number of indications in either direction, arriving finally at what must seem to the triers of the fact an evidentiary toss-up.

"More is required for compensability than a showing that the employment made it possible for the man to be where he was when misfortune struck. *But the Court continues to show liberality in its treatment of the highway, street and sidewalk accident where the employment necessitated, rather than permitted, the circumstances leading to accident.* So, in *Stadler Fertilizer Co.* v. *Bennett,*[2] where a man was required to drive from one place to another in order to carry out a several-situs project of employment, his trip accident arose out of and in the course of the employment. In the traveling salesman cases too, or for that matter, in any case where the work calls for what was described in the original text as a 'continuity of service' the Court has made broad inclusions. In *Business Systems* v. *Gilfillen,*[3] the Court applied the continuity doctrine to a traveling man killed in a company car headed in the direction of another city where business appointments awaited him." (Our emphasis.)

In the 1968 Cumulative Supplement, Mr. Segar correctly states that one of the determinative elements in many of the cases in highway, street and sidewalk accidents is that the employment necessitated, rather than permitted, the circumstances leading to the accident. He cites as authority for this suggestion the case of *Stadler Fertilizer Co.* v. *Bennett,* 124 Ind. App. 524, 119 N. E. 2d 26 (1954) and *Business Systems* v. *Gilfillen,* 120 Ind. App. 565, 92 N. E. 2d 868 (1950). We agree that the necessary rather than permitted presence of the employee at the time and place of the incident may be considered, along with other circumstances, by the trier of fact in finding that the incident arose out of and was in the course of employment.

A careful reading of the authorities cited in this opinion will indicate that since the *Harraden* case, *supra* in 1917, there have been a variety of conceptual labels placed upon cases involving employment risks from streets and sidewalks. The

frustration of trying to logically reconcile every one of these decisions was reflected in the decision of Judge Bedwell in *Burroughs Adding Machine Co.* v. *Dehn, supra* almost thirty years ago. However, it must be remembered that, notwithstanding the variety of conceptual labeling, the underlying and fundamental consideration is whether or not the particular injury is one "arising out of and in the course of the employment" as found in the Indiana Workmen's Compensation Act, Ind. Ann. Stat. § 40-1202 (Burns 1965), I.C 1971 22-3-2-2.

Considering all of the circumstances in this case in the light most favorable to the Appellee, we believe that the Industrial Board could have properly inferred that the risk to this employee for this type of injury was increased because of the factual nature of his employment. In this case the locale of the Appellee's employment was the operation of a specially equipped garbage collection truck in the streets and alleys of Bloomington, Indiana. His duty at the time of the accident required him to be precisely in the place where he was. These facts could have created a greater risk to this employee's being injured in the way in which he was in fact injured. The authorities which we have cited, both those early in the history of the Compensation Act and recent ones, do not disclose that the Industrial Board in this case committed reversible error as a matter of law. The Appellant has made a highly competent and professional effort to persuade us that the Industrial Board did commit reversible error as a matter of law in this case. However, notwithstanding the effectiveness of their advocacy, we remain unpersuaded.

Therefore, the decision of the Industrial Board in this case should be, and hereby is, affirmed.

Hoffman, C.J., concurs; White, J., concurs with opinion in which Staton, J., concurs.

## Concurring Opinion

White, J.—The legal question before the Industrial Board and now before this court is whether plaintiff employee's in-

jury arose out of his employment. The full board concluded that it did but failed to find the facts on which it based that conclusion, as required by section 60[1] of the Workmen's Compensation Act.

On first blush it appears that the evidence is susceptible of but one inference as to each material fact bearing on the legal question of whether the accident did arise out of the employment. If that be true we might suppose that the board's failure to find the facts is therefore a mere technicality which we should overlook in the interest of relieving an overworked board of a meaningless chore. The Supreme Court, however, has told us we cannot do that.[2]

But I am not convinced that there was no opportunity presented to the board by the evidence to choose between inferences. Which is to say that in at least one area material to whether the injury arose out of the employment the ultimate fact is not entirely clear. What was the purpose and intent with which the missile (the apple) was ejected from the passing bus? Did it "accidentally" leave the hands of the child on the bus or did he intentionally throw it into the street? If the act was intentional what was its motive? Did the thrower intend to hit someone? This particular apple? Why? Sport? Malice? Personal vengeance?

I agree that it is highly unlikely that the board, or any member thereof, was of the opinion that the injury had its origin in any personal malice of the thrower toward the injured employee. I agree that the most reasonable inference is that the injury arose from a "hazard of the street" and would have befallen anyone who happened to be in that particular spot at that particular time, whether seated in a trash

---

1. Ind. Ann. Stat. § 40-1511 (Burns 1965).

2. ". . . [I]t was an invasion of the province of the full board for the Appellate Court to undertake to find the ultimate facts in the first instance. The statute does not contemplate that the function of the Industrial Board may be assumed by the courts." *Cole* v. *Sheehan Construction Co.* (1944), 222 Ind. 274, 280, 53 N. E. 2d 172. See also *Carlton* v. *Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N. E. 2d 337, 16 Ind. Dec. 704.

pick-up truck, a Cadillac convertible, or standing there as a pedestrian. But I have no way of knowing whether compensation was awarded on the basis of such an unarticulated "finding." The fact that some other "finding" giving the injury a more obvious relationship to the employment might not have been supported by sufficient evidence to withstand judicial review is beside the point. Likewise the possibility that compensation may have been awarded without regard to whether the injury arose "out of" the employment, in the belief that any accidental injury which befalls an employee between starting time and quitting time is compensable, no matter how unlikely that may seem, is not negated by any "fact" recited in the board's minutes, entry, or award.

Because the result reached in Judge Sharp's opinion is the result I would have reached had I been a board member, I concur. But because I cannot agree that his approach to review of Industrial Board decisions is so "elemental" as he believes, I must once again register my protest to our doing the board's work. See *Miller* v. *Barrett* (1971), 148 Ind. App. 685, 269 N. E. 2d 772, 25 Ind. Dec. 547, in which this court, sitting *en banc*, reached no decision by reason of a four-to-four vote of the judges on the question of whether we or the board should find the facts.

Staton, J., concurs.

NOTE.—Reported in 276 N. E. 2d 582.