JAMES *v.* ZIMMERMAN COAL COMPANY.

[No. 16,062. Filed March 8, 1938.]

*Cooper, Royse, Gambill & Crawford,* for appellant.

*Hays & Hays, Alonzo C. Owens, John S. Taylor* and *J. Olias Vanier,* for appellee.

CURTIS, J.—The appellant, as the dependent widow of Milton T. James, deceased, filed her claim for compensation against the appellee before the Industrial Board of Indiana alleging that her husband's death resulted from personal injuries received by him by reason of an accident arising out of and in the course of his employment by the appellee. No special answer was filed.

From a finding and award of a single member of the board a review was asked and had before the full board, whose finding and award, omitting formal parts, is as follows:

> "And the full Industrial Board having heard the argument of counsel, having reviewed the evidence, and being duly advised therein, now finds that on September 3, 1936, one Milton T. James died. That on January 18, 1937, Susan E. James, plaintiff herein, filed her application for the adjustment of claim for compensation.
>
> "And the full Industrial Board of Indiana now

finds by a majority of its members for the defendant on plaintiff's application, that the death of the said Milton T. James was not due to an accidental injury arising out of and in the course of his employment with the defendant.

## ORDER

"IT IS THEREFORE CONSIDERED AND ORDERED by the full Industrial Board of Indiana by a majority of its members, that plaintiff shall take nothing by her complaint herein, and that she pay the cost of this proceeding."

It is from the above award that this appeal was prosecuted, assigning as error "That the award of the full Industrial Board is contrary to law."

The controlling facts, part of which was by way of stipulation and the rest by oral testimony, are not greatly in dispute. Two principal questions are presented, to wit: (1st) Was the deceased an employee within the meaning of the Workmen's Compensation Law? and (2nd) Did the accident arise out of and in the course of the employment of the decedent by the appellee? The evidence bearing upon those two questions is substantially as follows: Appellant's decedent had been employed by the appellee for thirty years preceding his death and that at the time of his death he was secretary-treasurer of the appellee corporation; that his duties included both work in the office and work outside the office; that the office of the appellee was located in the Tribune Building, between Seventh and Eighth Streets on Wabash Avenue, in the city of Terre Haute and that this office was the decedent's headquarters; that among the outside duties performed by the decedent for the appellee were purchasing of supplies, sometimes selling coal and sometimes collecting for it, and that decedent made frequent trips to the mines of appellee located at Brazil, Carbon, Patricksburg, Petersburg, Winslow and others, in all about twelve or thirteen small mines, and that all of such trips were

made on the business of the appellee; that the office hours of appellant's decedent were from 8 a. m. to 5 p. m., with a noon hour off for lunch and that decedent was not required to work in the evening to get out the trial balance; that ordinarily his work was completed at 5 p. m.; that prior to September 3, 1936, the appellee had endeavored to contact a Mr. and Mrs. Mathews who lived in Edgewood Grove just east of the city limits of Terre Haute, to secure a lease of coal lands owned by Mrs. Mathews and her brothers; that Ernest Butterman, a salesman and general clerk in appellee's office, had endeavored to secure this lease, and that the decedent had also attempted to do so, but neither had been able to find the Mathews at home during the day time; and that during the day of September 3, 1936, the president of the appellee corporation directed the appellant's decedent to go out that evening after dinner to the home of Mr. and Mrs. Mathews to endeavor to negotiate this lease with them; that Ernest Butterman lived at 3500 Wabash Avenue and that his home was located some 400 to 500 feet from the residence of Mr. James, the decedent, who lived in Edgewood Grove, adjacent to the city of Terre Haute and that the James, Mathews, and Butterman residences were all in the same locality; that pursuant to the instructions of the president of the appellee, appellant's decedent on the evening of September 3, 1936, went to call on the Mathews to negotiate the lease and arrived there between 7:00 and 7:30 p. m.; that decedent explained his business to Mr. and Mrs. Mathews, but as they had guests in their home they did not care to talk business matters, and the decedent did not secure the lease; that he then went to the home of Butterman and stopped just long enough to let Butterman get into the car and they drove into the business district of Terre Haute without making any stop, and parked his car at a point about

two blocks from the appellee's office building, where Butterman left him to go to the Elk's Club which was about a half block from where Mr. James had parked his car; that it was between 7:10 and 7:15 p. m. when Mr. James parked his car and let Mr. Butterman out; that Mr. James then started to the office and proceeded south on the east side of Seventh Street and when he reached Seventh and Wabash Avenue, approximately 1½ blocks from where he parked his car, and 200 or 250 feet from the entrance to the appellee's office, he was struck by an automobile belonging to some third person and injured; and that he died as a result of said injuries on September 9, 1936. The evidence shows that on the trip from Butterman's residence into the business part of the city James said something to Butterman about doing some work on a trial balance but the witness did not recall what else the decedent stated he was to do that evening. Butterman testified that about 15 minutes after he had left James at the place where James parked his automobile, he, Butterman, was notified at the Elk's Club of the accident. The evidence further shows that it was the custom of the decedent to make and leave written memoranda for the president of the appellee and for others in the office concerning matters of business of the appellee, and particularly on matters that the decedent attended to outside of the office. The evidence further shows that Mr. James was not required to and had not been instructed to go back to the office on the night of September 3, to work on his trial balance and that so far as the trial balance was concerned he could have worked on it the following day during regular business hours. His salary or wages was $350.00 per month.

By the finding of the full board "that the death of the said Milton T. James was not due to any accidental

injury arising out of and in the course of his employment with the defendant" the board necessarily concluded that at the time of the accident the decedent was not upon the mission of obtaining the lease. It is to be remembered that in that mission the decedent went to the home of the owners of the land or their representatives, which home was farther away from the downtown district where he was hurt than his own home, and that he came back to the near vicinity of his own home after finding that he could not secure the lease that night and then went to a neighbor's home and took him with him on the trip down town. From the point where he took the neighbor into his car it was several miles to the place of the accident. The neighbor said that the decedent told him he was going to the office to work on the trial balance and finish some work the exact nature of which the decedent did not specify. We think that the evidence sustains the conclusion evidently reached by the board that the decedent, at the time of the accident, was not upon the lease mission and that he, of his own volition, had concluded to go to the office after the lease mission had failed. He was under no request from the employer to go to the office and his working hours were from 8 a. m. to 5 p. m. with one hour off for noon lunch. The accident occurred around 7:30 p. m. While the evidence in the case might be construed differently by reasonable men as is evidenced by the fact that the award is not concurred in by all members of the Industrial Board, yet we believe that it is sufficient to sustain the finding of facts and that the facts found are sufficient to sustain the award. In the instant case the question as to whether the accident arose out of and in the course of the employment was a question of fact for the determination of the board and its finding will not be disturbed where, as here, it is sustained by some com-

petent evidence. The evidence is not of such conclusive character as to force a conclusion contrary to that reached by the board. No new principles of law are announced herein and we do not deem it necessary to extend this opinion by the citation of the many authorities upon the propositions stated.

It follows that if the accident to the decedent "was not due to any accidental injury arising out of and in the course of his employment with the defendant" it becomes unnecessary to discuss the other question as to whether or not he was, at the time of the accident, an employee of the appellee within the meaning of the Indiana Workmen's Compensation Law.

The award is affirmed.

Bridwell, J., not participating.