RUSSELL *v.* THE AUBURN CENTRAL MANUFACTURING COMPANY

[No. 16,365. Filed October 16, 1939.]

*John E. Sedwick,* and *William G. White,* for appellant.

*James L. Murray,* for appellee.

CURTIS, J.—This was an action before the Industrial Board of Indiana upon the issues made by the appellant's application for compensation under the Indiana Workmen's Occupational Disease Act to which application there was a general denial by the appellee. It was alleged that the appellant's disability was due to "occupational disease in his head and lungs, low blood pressure, nervousness, lead poisoning and dermatitis of the body." In his brief it is stated that the appellant "is and was afflicted with inflamation of the nose, throat and lungs, due to emery dust and metal grinding dust and fumes from muriatic acid and lead particles and dust all causing a diseased condition causing total permanent dis-

ability. . . . That the record shows without dispute or controversy that appellant contracted a disease due to muriatic acid fumes, or that appellant had a latent, or inactive or dormant sinusitis and bronchitis which was not disabling and which was made active and virulent by the fumes and dust causing total disability to the day of the hearing.'' Further the appellant says that ''the question of this appeal is reduced to but one under the errors assigned; viz. does the record conclusively show that appellant is entitled to compensation under the Occupational Diseases Act by reason of having contracted occupational disease as distinguished from non-occupational disease, which latter is defined to be the ailments to which the people generally are exposed and from which the public generally suffers independent of an employment?''

The Industrial Board upon an application made to it to review the finding and award of the single member made its finding and award from which we quote as follows: ''And the Full Industrial Board having heard the argument of counsel, having reviewed the evidence and being duly advised therein, now finds by a majority of its members, that on December 1, 1937 the plaintiff was in the employ of the defendant at an average weekly wage in excess of $30.00; that on January 4, 1938 plaintiff left the employ of the defendant; that on April 14, 1938 the plaintiff filed his application for the adjustment of a claim for compensation under the provisions of the Indiana Workmen's Occupational Diseases Act.

And the Full Industrial Board, by a majority of its members, now finds for the defendant on all the other material allegations of plaintiff's complaint, filed April 14, 1938.

## AWARD

"It is therefore considered and ordered by the Full Industrial Board of Indiana, by a majority of its members, that plaintiff shall take nothing by his complaint herein and that he shall pay the costs of this proceeding."

It is from the above award that this appeal was taken, the error assigned being that the award of the full board is contrary to law. This assignment presents all questions sought to have reviewed.

In the section giving the definition of the term occupational disease is the following: "As used in this Act, the term 'occupational disease' means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensible, except where such diseases follow as an incident of an occupational disease as defined in this section." Upon the source of such disease paragraph (b) of the same section provides: "Source of Disease. (b) A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need

not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." See: Section 6, chapter 69, Acts 1937, page 340.

The controlling facts are not greatly in dispute. In short they may be briefly stated to be that the appellee was a manufacturer of beer and cold drink cabinets and in November 1937 established a soldering department in its factory to facilitate its work. The appellant was employed in said department shortly after it was established and became exposed to the fumes from the hydrochloric acid (muriatic acid) used in cleaning the soldering irons. He complained of the fumes and after three weeks was moved to a different department. When he finally quit working for the appellee in January 1939 he went to his home town doctor and was found to be suffering from bronchitis, pharyngitis and sinusitis.

At the hearing before the single member of the board there was evidence that he was suffering from bronchitis and sinusitis but there was no evidence that he was suffering from lead poisoning. Three doctors testified, one for the appellant and two for the appellee. The appellant's doctor testified that he would not say that such diseases were caused by his employment but that he did believe that the acid fumes accelerated such diseases. But the medical testimony did not stop there. The other two doctors testified that they saw no connection between the employment and his condition except that one of them thought his sinusitis might have been accelerated temporarily by such acid fumes. All of the doctors agreed that the appellant was suffering from diseases common to a person in the ordinary walks of life and that none of the diseases from which he

was suffering was singular or peculiar to the employment. There was thus some competent evidence that the diseases from which the appellant was suffering had no connection with his employment. Upon this state of the medical testimony the board made the finding and award heretofore set out. We cannot say that such finding and award is not sustained by competent evidence. Under the statute the finding of the Industrial Board is conclusive and binding upon all questions of fact and where such a finding is sustained by any competent evidence this court will not reverse the board's award and substitute a finding by it for the board's finding. Before this court will reverse an award of the board upon the evidence it must be of such a conclusive character as to force a conclusion contrary to that of the board. See: *Claypool Machine Company* v. *Cripe* (1937), 104 Ind. App. 156, 10 N. E. (2nd) 427.

For the reasons stated the award of the board is affirmed.