CASEY *v.* STEDMAN FOUNDRY AND MACHINE CO., INC.

[No. 19,477. Filed November 29, 1962. Rehearing dismissed December 19, 1962. Transfer denied February 4, 1963.]

*Hartell F. Denmure,* of Aurora, and *Charles A. Lowe,* of Lawrenceburg, for appellant.

*Paul V. Wycoff,* of Batesville, for appellee.

BIERLY, J.—This cause comes to us on appeal by a workman from an adverse decision as to the merits of his cause under the Indiana Workmen's Occupational Diseases Act.

The appellant was employed by the appellee from 1935 to September, 1956. For a short time he worked in the machine room, and the balance of the time in the foundry shaking out of casting moulds, red-hot

castings, that ranged in size from about 12 by 12 to some 36 feet long.

The evidence indicates that the working conditions were less than ideal. The sand used in the moulds was treated with chemicals, apparently for purposes of cohesion. When the moulds were being stripped from the castings, a considerable quantity of dust as well as gas fumes would come up in appellant's face. Mr. Casey became ill, as a result of his illness he was forced to retire from gainful employment as of September, 1956, and is now receiving Social Security benefits, having been declared by the Social Security Department to be one hundred percent disabled.

It is appellant's contention "that the general nature and character of the illness or disease for which compensation is sought is pulmonary emphysema and fibrosis secondary to occupation chronic bronchial infection as a result of dust exposure in connection with occupation."

An occupational disease, within the meaning of the Occupational Diseases Act, is one which gradually develops from, and bears a direct causal connection with the conditions under which the work is performed, and which results from an exposure occasioned by and naturally incidental to a particular employment, *and is not such a cause from a hazard to which workmen would have been equally exposed outside the employment*, but must appear to have had its origin in a risk connected with the employment and to have flowed from this source as a rational consequence. (Our emphasis). *Star Publishing Co.* v. *Jackson* (1944), 115 Ind. App. 221, 58 N. E. 2d 202. "Ordinary diseases of life to which the general

public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section." §40-2206(a), Burns' Ind. Stat., 1952 Replacement. Subsection (b) reads as follows:

"(b) A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

In a case arising in a proceedings under the Workmen's Occupational Diseases Act in *Chev. Mun. Div. of Gen. Mot. Corp.* v. *Hirst* (1943), 113 Ind. App. 181, 188, 46 N. E. 2d 281, the court's interpretation of Section 6 of the act being §40-2206, Burns' 1940 Replacement, (a) and (b), is as follows:

"As we understand this section, it provides that ordinary diseases of life to which the general public is exposed outside of the employment shall be compensable only where such diseases follow as an incident of a disease arising out of and in the course of the employment, subject only to the requirements of subdivision (b) of said section." (Transfer on said cause denied March 29, 1943).

We quote also from the case of *Schwitzer-Cummins Company* v. *Hacker* (1953), 123 Ind. App. 674, 697, 112 N. E. 2d 221, which arose under the Workmen's Occupational Diseases Act, wherein the court said in part:

". . . The interpretation we have herein placed upon the Act seems to us to be consonant with justice and the intent of the Legislature as expressed by the written Act, and in accord with the apparent leanings of our courts as indicated in their previous holdings. In all cases the claimant must establish that the disease of which he complains arose out of and in the course of his employment *under circumstances consistent with the requirements of subdivision (b) of section 6 of the Act.*" (§40-2206(a) and (b), Burns' Ind. Stat., 1952 Replacement.)

In the foregoing case, the Appellate Court affirmed the award of the Industrial Board in favor of the appellee holding that substances breathed in the course of employment produced the disease of bronchiectasis "which was an incident of an occupational disease as defined in Section 6 of the Occupational Diseases Act."

This court is charged with the obligation to review the evidence presented to determine whether there exists any support justifying the findings by the Industrial Board that the illness of claimant did not arise out of and in the course of his employment when measured by the requirements and limitations as set forth in said Section 6, subdivisions (a) and (b).

The defendant called a medical witness, Russell S. Henry, M. D., who after having been duly qualified, testified in part as follows:

"Q. Well, at any rate, he has no silicosis?

A. That's right. And I examined him and he was comfortable while I was conversing with him. He stated that he was much better, however, than when he first consulted Dr. Podore, just as Dr. Podore testified, and I found that his breath sounds were high pitched and subdued. A few heavy rales in the left base posteriorly, excursions of both chests were normal, heart sounds were normal, vital capacity at that time was thirty-one hundred ccs. of air as compared with about forty-five ccs., which would be normal. Chest x-rays taken at the office at that time showed normal lungs throughout except for the clinical findings of moderately severe emphysema. That was my diagnosis, that the man had emphysema. I concurred in that diagnosis, although I called it moderate emphysema with a vital capacity of thirty-one hundred ccs. of air, and the man was comfortable. A severe emphysema isn't comfortable when you're sitting still. So the fact that he improved I felt sure then that there was more to this than emphysema, because emphysema is not reversible. They do have their better periods but that usually is because of right heart failure that is improved, but in this case I am sure that is bronchial asthma and I'm sure that Dr. Podore treated him for bronchial asthma because when we talk about broncho-spasm that's what we mean by bronchial asthma. They're one and the same. So I think the fact he improved, he improved with asthma but not emphysema. That is permanent and irreversible, so my diagnosis was moderately severe emphysema with a possibility background of asthma, of which emphysema is a complication. It is permanent and since we find it in all walks of life and occupations I did not feel that it had any relationship to his occupation, and in his history there is no direct indication that I should consider it as such.

Q. Now your examination last week, Doctor, explain what you found in that examination.

A. I took another x-ray and there was absolutely no difference, I can't tell one x-ray from the other. The history was the same. I asked him whether anything had happened since I saw him. He said, "no." Now this compression fracture, he didn't tell me about that. Cough, of course, that goes along with older age, and emphysema generally don't make a person age, and so there was no change and although he said he was somewhat more short of breath than he was when I saw him before, so, I had a long way to go and I didn't hold him."

By denying the claimant any compensation for alleged illness or disease arising out of and in the course of his employment, it is apparent that the Industrial Board adopted the testimony of Doctor Russell S. Henry and concluded that appellant had failed to sufficiently establish a causal connection between conditions of employment tending to produce the disease complained of when measured by the provisions set forth in Section 6 of the Act. (§40-2206(a) and (b), Burns', *supra.*)

In the case of *Brooks* v. *International Furniture Co.* (1951), 122 Ind. App. 300, 305, 101 N. E. 2d 197, this court, although the Industrial Board's award was negative as to plaintiff, said:

" . . . It must be conceded also that there is ample evidence in the record to support an affirmative award based on the appellant's theory of liability had the Industrial Board seen fit to so do.

Such a situation however does not justify this court in reversing the present unfavorable award unless the controlling facts are such that reasonable men are forced to a conclusion contrary to that reached by the Industrial Board. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N. E. 2d 116; *James* v.

*Zimmerman Coal Co.* (1938), 105 Ind. App. 28, 13 N. E. 2d 315. . . . "

This court held in a more recent case, *Woldridge* v. *Ball Brothers Co., Inc.* (1958), 129 Ind. App. 420, 150 N. E. 2d 911, (Transfer denied March 30, 1959), that before there can be a reversal of a negative "award on the evidence," it is necessary that the evidence appears "all one way and so conclusive in character as to force a conclusion in the minds of reasonable men contrary to that reached by the Industrial Board." See also *Russell* v. *Auburn Cent. Mfg. Co.* (1939), 107 Ind. App. 17, 22 N. E. 2d 889.

We are of the opinion that there is evidence which tends to support the award of the Board denying the relief sought by the appellant.

Hence upon a consideration of all the evidence we are unable to say that the finding of the Board is not founded upon a substantial factual foundation or that the conclusion of the Board is contrary to law.

The award of the Industrial Board is affirmed.

Gonas, P. J., Kelley, Pfaff, JJ., concur.

NOTE.—Reported in 186 N. E. 2d 177.