DAVIS v. WEBSTER AND AUTO OWNERS INSURANCE COMPANY.

[No. 20,022. Filed June 4, 1964. Rehearing denied July 27, 1964.]

*Worth N. Yoder,* of Elkhart, for appellant.

*D. Russell Bontrager,* and *Bontrager & Spahn,* of Elkhart, for appellees.

HUNTER, C. J.—This matter is a review of proceedings under the Workmen's Compensation Act brought by the appellant before the Industrial Board of Indiana, seeking a compensation award by reason of in-

juries arising out of and in the course of decedent's employment, which injuries resulted in the death of decedent. The appellant was the decedent's common-law wife.

The cause was submitted for hearing before a single member of the Board, who found that the decedent, Marion F. Davis, died as the result of an accidental injury while performing services in a joint adventure with the appellee; and that at the time of said accident and injury no relationship of employer and employee existed between the appellant's decedent and the appellee. The single member also found that the decedent was survived by one dependent: the appellant, who was his common-law wife, said relationship having existed for more than five years prior to said death. The order was that the appellant take nothing by her application. Upon review by the full Industrial Board, the Board made the same findings and entered the same order as had been recommended by the single member.

The questions presented in this matter are whether the Industrial Board was correct in finding that at the time of the death of the applicant's decedent (1) that Davis and the appellee Webster were engaged in a "joint adventure," and (2) that there was no employer-employee relationship existing between the appellant Davis and the appellee Webster. The appellee Auto Owners Insurance Company was made a defendant by reason of being the appellee Webster's compensation insurance carrier.

The appellant's argument may be briefly stated as follows, that since the Board's findings are based on the appellee's motion for a finding on appellant's evidence, the Board was bound to :

(1) consider only the evidence tending to sustain the appellant's application;

(2) consider as true all facts which the evidence tends to prove or of which there is any evidence, however slight;

(3) draw from the evidence all inferences which were favorable to the appellant; and

(4) find against appellees on their motion for a finding on appellant's evidence if there was any evidence from which it could be reasonably inferred that appellant was entitled to relief.

It appears to us that the appellant has mistaken the function of this court in the matter of judicial review of the orders of the Industrial Board in that the appellant is requesting this court to apply the rules which would apply if this were an appeal from a judgment of a trial court in an ordinary civil action under the usual civil procedure, but this is not such an action.

The Industrial Board of Indiana is an administrative body and not a court. *Rhoden et al.* v. *Smith, etc. Elec. Co.* (1939), 107 Ind. App. 152, 23 N. E. 2d 306. We think the rule to be well settled that the Industrial Board is not bound by the rules of court procedure. It has a procedure of its own and the Board borrows nothing by implication from the civil code or the common law. We believe it to be well settled that the Board may prescribe its own procedures which may be summary in nature and should be as simple and informal as possible. *Terre Haute Paper Co.* v. *Price* (1943), 113 Ind. App. 578, 47 N. E. 2d 166.

It is immaterial to the Board's findings of fact whether the evidence was presented solely by the appellant if such evidence or reasonable inferences to be drawn therefrom sustain the Board's findings. The appellee was not required to present

evidence before the Board if the appellee did not deem it necessary to the defense of the claim.

Quite often proceedings in this court which challenge the correctness of the findings and orders of administrative bodies are designated and referred to as ██ appeals, however such proceedings are in fact not civil appeals in the ordinary sense of the word, but rather are judicial reviews of the findings and orders of an administrative agency. In such a case, the finding of the administrative agency is conclusive and binding as to all conclusions of fact if such findings are premised upon evidence or reasonable inferences to be drawn therefrom. In determining the correctness of the finding of the Industrial Board this court must accept only the evidence most favorable to the appellee. *Collins* v. *Evansville State Hospital* (1963), 134 Ind. App. 471, 189 N. E. 2d 106; *Glacier Peat Moss Company* v. *Brackins et al.* (1959), (Transfer denied 1960), 131 Ind. App. 279, 157 N. E. 2d 297.

Further, the rule is well established that the Appellate Court may not reverse the finding of the Industrial Board unless the evidence and all reasonable inferences to be based thereon are of such a conclusive nature as to force a contrary decision. *Collins* v. *Evansville State Hospital, supra; Glacier Peat Moss Company* v. *Brackins et al., supra; Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1947), 225 Ind. 517, 75 N. E. 2d 662.

This court under the law cannot reverse the findings of the Industrial Board on fact issues unless it conclusively appears that the evidence upon which the Industrial Board acted was devoid of probative value; or that the quantum of legitimate evidence was so proportionately inadequate and

meager as to show that the finding could under no circumstances rest upon a rational basis, or the result must have been substantially influenced by improper considerations. *Pollock* v. *Studebaker Corp.* (1952), 230 Ind. 622, 105 N. E. 2d 513; *Indiana Board of Pharmacy* v. *Horner* (1961), 241 Ind. 326, 172 N. E. 2d 62.

The rule which the appellant seeks to invoke has no applicability to the matter before this court and the authorities cited in support of such rule in our opinion are not relevant to the issue presented here. None of the cases cited by the appellant in support of her contention deals with a review of a finding of the Industrial Board and indeed we have been unable to find any Industrial Board case where such rule has been applied.

The Board's finding that there was no employer-employee relationship existing between Davis and the appellee Webster is attacked by the appellant on the ground that there is lack of evidence to support it.

Before there can be a reversal of a negative award on the evidence, it is necessary that all the evidence appear one way and be so conclusive in nature and character as to force a conclusion in the minds of reasonable men, contrary to that reached by the Industrial Board. *Elmo R. Casey* v. *Stedman Foundry and Machine Co., Inc.* (1962), (Petition to transfer denied February 4, 1963), 134 Ind. App. 291, 186 N. E. 2d 177; *Woldridge* v. *Ball Brothers Company, Inc.* (1958), (Transfer denied March 30, 1959), 129 Ind. App. 420, 150 N. E. 2d 911; *Russell* v. *Auburn Cent. Mfg. Co.* (1939), 107 Ind. App. 17, 22 N. E. 2d 889.

The evidence and reasonable inferences to be deduced therefrom most favorable to the appellee and in support of the Board's finding of the lack of an employer-

employee relationship is as follows: about ten years prior to July 5, 1960, appellant's decedent (hereinafter referred to as "Davis"), and appellee Webster (hereinafter referred to as "Webster"), began working together as steeplejacks. (Tr. p. 162, ll. 13-15). During that ten year period, Davis and Webster worked together on three or four jobs a year. (Tr. p. 162, ll. 24-25). Webster carried his own workmen's compensation insurance. (Tr. p. 178, l. 26—p. 179, ll. 1-2). Davis, likewise, carried his own workmen's compensation. (Tr. p. 157, ll. 2-6). At no time during this ten year period did Webster deduct Social Security contributions, Federal Income Tax or Indiana Gross Income Tax from payments made to Davis. (Tr. p. 182, l. 12 to p. 184, l. 3). At no time did Webster make any Employment Security payments on account of Davis' work. (Tr. p. 184, ll. 4-7).

On jobs on which Webster and Davis worked together, Davis usually did the rigging. Webster did the rigging for his own work. Davis did his own rigging on the fatal job. (Tr. p. 166, l. 11 to p. 167, l. 25).

In the latter part of June, or the early part of July, 1960, one Floyd J. Martin, a painting and decorating contractor, entered into a sub-contract with Webster to paint and generally repair the steeple on the Presbyterian Church in Goshen, Indiana, at and for an agreed price of Nine Hundred ($900.00) Dollars. Martin was to furnish the paint and necessary materials, consisting of ridge roll and slate shingles. (Tr. p. 74, l. 8 to p. 77, l. 7; p. 160, ll. 16-18).

The nature of the job was such that one man could not work it alone. (Tr. p. 180, ll. 5-25). By reason thereof, Webster contacted Davis, with whom he had been working on two man jobs for a period of ten

years. During the previous four or five year period Webster associated himself with no one other than Davis on two man jobs, except on occasions when Davis was not available. (Tr. p. 165, ll. 8-15).

In due time an oral agreement was reached under which Davis undertook to work with Webster on the job. Davis was to furnish small tools, consisting of a hammer and a ladder, (Tr. p. 175, ll. 6-13), and Webster furnished the rigging, consisting of ropes, tools, hammers and a ladder. (Tr. p. 160, l. 19 to p. 161, l. 9).

Davis' share of the profit on the job was to be a flat Three Hundred Fifty ($350.00) Dollars. (Tr. p. 175, l. 19 to p. 176, l. 15). As far as the evidence discloses, neither Davis nor Webster contributed anything to the job other than tools, time and labor, except that Webster, out of what was left from the Nine Hundred ($900.00) Dollars after paying Davis Three Hundred Fifty ($350.00) Dollars, bought some cable and clamps, (Tr. p. 179, ll. 15-24), and apparently paid the cost of operating his truck in transporting equipment to the job. (Tr. p. 179, ll. 6-14).

Under the agreement between Webster and Davis, Webster was not to withhold from the Three Hundred Fifty ($350.00) Dollars to be paid to Davis for Social Security, Federal Income Tax or Indiana Gross Income Tax. (Tr. p. 181, l. 22 to p. 182, l. 4).

Preparatory to starting the work on the steeple, Davis and Webster worked together making up the rigging on the ground. Davis alone then put the rigging on the steeple, after which the two of them tested it by putting their combined weight on a seat board attached to the rigging. (Tr. p. 167, ll. 8-25).

After the rigging was placed in position, Webster did the work on the lower part of the structure and Davis worked on the upper part of the structure. (Tr. p. 169, l. 27 to p. 170, l. 3). The steeple itself was in two parts. The lower part, referred to by the parties as the "steeple," sat on a separate base. The upper part, referred to by the parties as the "spire," sat on a separate base. (Tr. p. 155, ll. 3-5).

When the decedent fell to his death, he was working on the upper spire, about six feet down from the top. (Tr. p. 156, ll. 6-12). He was working from a cable attached to the top of the steeple (spire). (Tr. p. 158, ll. 15-22). Webster was working from a second cable which was around the steeple about twelve feet below the spire. Davis had just moved the Webster rigging and Webster had resumed working, (Tr. p. 158, ll. 15-22) when Davis, apparently attempting to transfer his own rigging, (Tr. p. 156, ll. 6-10) fell.

We are of the opinion, therefore, that the evidence and all reasonable inferences to be deduced therefrom sustain the Board's finding of a "joint adventure." *Keck* v. *Pozorski* (1963), 135 Ind. App. 192, 191 N. E. 2d 325; *A. J. Yawger & Co.* v. *Joseph* (1915), 184 Ind. 228, 108 N. E. 774.

Where the nature of a joint undertaking by two or more persons is such that no losses other than of time and labor in carrying out the undertaking are likely to occur, the agreement of the parties to divide profits may suffice to stamp the undertaking a joint adventure, though nothing is said about sharing losses. *Baker, etc. et al.* v. *Billingsley et al.* (1956), 126 Ind. App. 703, 132 N. E. 2d 273.

In a technical joint adventure, there is usually a sharing of profits and losses in the prosecution of a com-

mon enterprise, however the mode of participation in the fruits of the undertaking may be left to the agreement of the parties. *Universal Sales Corp.* v. *California, etc., Mfg. Co.* (1942), 20 Cal. 2d 751, 128 P. 2d 665. We agree with the appellee's statement that the legal relationship known as a "joint adventure" is a creature of our American courts and is not based on statute. As a legal concept, it is of comparatively recent origin and is still in the process of development. There is no certain, satisfactory or all-inclusive definition. The decisions of the court have not established any fixed or certain boundaries to the legal concept of joint adventure. See 48 C. J. S., *Joint Adventures,* §1, pp. 801-3 and 30 Am. Jur., *Joint Adventures,* §11, p. 948. The appellant has cited to us the case of *Grover* v. *Marott* (1922), 192 Ind. 552, 136 N. E. 81, as authority for her contention that under the facts in this case, the Board erred in finding that Davis and the appellee Webster were engaged in a joint adventure. However, that case hinged upon actual fraudulent representations and has none of the elements analagous to the case at bar for in the instant case there is no contention or averment that there was any fraud between the appellee Webster and his associate Davis.

We therefore are of the opinion that the evidence and all reasonable inferences to be deduced therefrom sustain the Board's findings of (1) "joint adventure," and (2) a lack of the existence of an employer-employee relationship between Davis and the appellee Webster.

We therefore hold that the Board's finding and order denying the appellant's claim is not contrary to law and is hereby affirmed.

Kelley, Mote and Pfaff, JJ., concur.

NOTE.—Reported in 198 N. E. 2d 883.