COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





CELADON TRUCKING SERVICES,
INC.,

                         Appellant/Cross-Appellee,

v.

MARIO MARTINEZ,

                         Appellee/Cross-Appellant.

§
 
§
 
§
 
§
 
§

§

 §


No. 08-07-00313-CV

Appeal from
 384th District Court

of El Paso County, Texas

(TC # 2002-3447)



 

 

 




O P I N I O N

            Celadon Trucking Services, Inc. appeals from a judgment entered in favor of Mario Martinez. 
Because we conclude that the Indiana Workers’ Compensation Board had exclusive jurisdiction of
Martinez’s claims, we reverse and render judgment dismissing his suit.
FACTUAL SUMMARY
            Mario Martinez, who lives in El Paso, applied for a job as a truck driver with Celadon at its
El Paso terminal.


 Celadon is a trucking company with its headquarters in Indiana. After being
hired, Martinez traveled to Indianapolis for orientation. Celadon paid for his trip and housed him
in a dormitory during the three day orientation. While at orientation, Martinez signed an agreement
with Celadon’s subsidiary, Celadon Trucking Company of Indiana, Inc., entitled “Worker’s
Compensation Acknowledgement & Agreement” which provided that Martinez’s employment was
“principally localized in Indiana” and Indiana workers’ compensation law would apply to the
settlement of any claim arising out of any job related injury. Martinez does not read English and he
did not understand the documents presented to him, but he did not ask anyone to translate the
documents nor did he tell anyone he could not understand them. Martinez signed the documents
because he needed the job. After orientation concluded, Celadon provided Martinez with a truck and
he returned to El Paso. Martinez’s designated route covered several Texas cities but he sometimes
drove to other states. 
            In August 13, 2001, Martinez suffered on-the-job injuries to his back and leg as the result of
a vehicular accident in Sweetwater, Texas. After he received emergency treatment, another Celadon
truck driver who was passing through transported him home. Celadon is self-insured for workers’
compensation purposes in Indiana but it is not a qualified self-insurer in Texas. Celadon’s workers’
compensation manager, Audrey Manning, called Martinez two days after the accident and told him
that his claim would be handled under Indiana law pursuant to the agreement he had signed, he
would receive benefit checks, Celadon would pay for his medical care, and Celadon had the right
to direct his medical care. Manning also told him to go to the Eastside Medical Care Center in
El Paso for initial treatment. Manning filed a report of injury that same day and forwarded it to
Celadon’s third-party claims administrator, JWF Specialty Company. Karen Salwowski, a JWF
employee, handled Martinez’s claim. On August 27, 2001, JWF filed a form entitled “Agreement
to Compensation of Employee and Employer” with the Indiana Workers’ Compensation Board
reflecting Martinez would be compensated weekly at a certain amount while off work. The benefit
checks were deposited directly into Martinez’s bank account. 
            Martinez complied with Manning’s instructions and initially received treatment at the
Eastside Medical Clinic. The doctors’ work status reports restricting Martinez from all work were
forwarded to Manning. MRIs of the knee and back were performed on August 20, 2001 and 
reflected that Martinez had a herniated disc in his lower back and joint effusion with early bursitis
in the knee. Consequently, Martinez was referred to an El Paso orthopedic surgeon, Dr. Eric Sides,
who restricted Martinez from all work. On August 27, 2001, Manning sent a six-page fax to
Salwowski with the notation, “Mario is wanting surgery. We need to bring Mario to Indy. See Dr.
Lorber.” Manning explained that she wanted Martinez to get a second opinion in Indianapolis before
he underwent surgery.
            On October 4, 2001, Manning authorized Salwowski to hire a nurse practitioner, Beth Bader,
to assist with Martinez’s claim. Bader referred Martinez to Dr. Angelo Romagosa, who is a board
certified in physical medical and rehabilitation and she asked Dr. Romagosa to provide detailed
information about Martinez’s medical condition and progress. On October 22, 2001, Dr. Romagosa
provided a detailed report to Bader. He diagnosed Martinez with a lumbar strain, a herniated disc,
aggravation of a facet joint in the lower back, and a knee injury. In his opinion, Martinez’s prognosis
for recovery was good. Dr. Romagosa stated it would be two to three months before he would be
able to determine when Martinez could return to light duty. Because Martinez was experiencing
severe spasms in his back and radicular pain, Martinez would not be able to return to light duty
immediately, but Dr. Romagosa hoped that with treatment Martinez would be able to return to job
as a truck driver in six months. Bader instructed Dr. Romagosa to take over Martinez’s treatment
and he proceeded to treat Martinez with corticosteroid injections in the knee and back as well as
physical therapy. Dr. Romagosa also prescribed anti-inflammatory and pain medications. Manning
received a copy of Dr. Romagosa’s letter.
            It is Celadon’s policy to bring drivers to Indiana for light duty work when a light duty release
is obtained. The policy has several purposes but the main reason is for medical treatment. On
October 30, 2001, Salwowski instructed Bader to set up an appointment for Martinez to see Dr. John
Lomas at Methodist Occupation Health in Indianapolis. Salwowski also told Bader that she needed
to get a light duty release for Martinez from Dr. Romagosa. On October 31, 2001, Bader called Dr.
Romagosa’s office and told the staff she needed return to work restrictions “now.” Bader spoke with
Dr. Romagosa about her request for Martinez to travel to Indiana but he did not believe it was a good
idea due to Martinez’s symptoms. Bader told Dr. Romagosa that Celadon was insisting on Martinez
traveling to Indiana for further treatment. She also said that Martinez would continue to receive
treatment only if he flew to Indiana. Bader instructed Dr. Romagosa to complete the Texas Workers’
Compensation Work Status Report form which would serve as a prescription allowing Martinez to
fly. Dr. Romagosa specifically told Bader that Martinez was not ready to return to light duty and he
was only clearing Martinez to fly. With Bader’s guidance, Dr. Romagosa completed the form
writing in the section titled “other restrictions” that Martinez “may fly by plane.” He left blank the
section entitled “work status information” which would have indicated that Martinez’s medical
condition would allow him to return to work on a given date with the restrictions listed in Section
III of the form, but he listed various work restrictions in Section III. Bader forwarded the form to
Salwowski and Manning. 
            Although she had received a copy of Dr. Romagosa’s October 22, 2001 letter, Manning
interpreted the form as a light duty release and called Martinez on November 2, 2001 to inform him
that Dr. Romagosa had released him to light duty. She told him that Celadon had a light duty
position available in Indianapolis and if he did not accept the position, his benefits would be
terminated. Martinez also spoke with Bader about the letter. She told him that if he did not go to
Indiana, his benefits would be cut and his therapy would cease. Martinez went to Indianapolis on
November 5, 2001 because he felt he had no choice. 
            Celadon housed Martinez in a large dormitory in a fenced compound. He spoke with
Manning and she represented to him that he had been released to light duty. When he asked to see
the release, Manning refused to show it to him. At this point, Martinez began to suspect that
Manning was lying to him. He saw Dr. Lomas the following day and was released to light duty. 
Manning put Martinez to work. 
            On January 10, 2002, Bader notified Manning and Salwowski that Martinez had been
scheduled for a functional capacity evaluation. She expected Martinez to be placed at maximum
medical improvement (MMI) and that he would be discharged from medical care. Martinez attended
the functional capacity evaluation on January 11 and a report was sent to Dr. Lomas. When Martinez
saw Dr. Lomas on January 15, Dr. Lomas concluded that Martinez’s functional abilities were
permanent and released him from care. Celadon terminated Martinez’s employment the same date
because he had been released from workers’ compensation with permanent restrictions. 
            After receiving Dr. Lomas’ written diagnosis that Martinez had a 7% permanent impairment,
Salwowski prepared a settlement agreement entitled “Agreement to Compensation of Employee and
Employer.” The agreement is on Indiana state form 1043. According to the agreement, Martinez
had a 7% PPI and he would be paid $9,100 in a lump sum upon approval of the Indiana Workers’
Compensation Board. Martinez met with Manning and presented the agreement to him. She told
him that he had reached maximum medical improvement and he did not need any more treatment. 
Manning told Martinez that if he did not sign the agreement, he would get nothing, but if he signed
it, he would get the money and Celadon would send him home to his family. Martinez signed the
documents and returned to his family the same day. The Indiana Workers’ Compensation Board
approved the agreement. Martinez was unable to continue with his therapy following his termination
because he could not afford it. 
            Martinez filed suit against Celadon alleging non-subscriber negligence, wrongful termination,
and fraud. The trial court granted partial summary judgment on all causes of action other than the
fraud and wrongful termination. A jury returned a verdict in favor of Martinez on the fraud claim
and in favor of Celadon on the wrongful termination claim. The jury awarded actual damages in the
total amount of $354,362.50 and punitive damages in the amount of $5,000,000. The trial court
rendered judgment on the verdict with the exception of the punitive damages award which the court
reduced to $3,000,000. Both parties filed notice of appeal. 
SUBJECT MATTER JURISDICTION
            We first address Issue Two because it challenges the trial court’s subject matter jurisdiction. 
Celadon contends that the case should have been dismissed because the Indiana Workers’
Compensation Board had exclusive jurisdiction over Martinez’s claims and Martinez failed to
exhaust his administrative remedies. Alternatively, Celadon argues that Martinez did not exhaust
his administrative remedies with the Texas Division of Workers’ Compensation. It is undisputed
that Martinez did not present his tort claims before either the Indiana Board of Workers’
Compensation or the Texas Division of Workers’ Compensation.
            We presume that district courts are authorized to resolve disputes unless the constitution or
other law conveys exclusive jurisdiction on another court or administrative agency. In re
Southwestern Bell Telephone Company, L.P., 235 S.W.3d 619, 624 (Tex. 2007); In re Entergy
Corp., 142 S.W.3d 316, 322 (Tex. 2004). An agency has exclusive jurisdiction when a pervasive
regulatory scheme indicates that the Legislature intended for the regulatory process to be the
exclusive means of remedying the problem to which the regulation is addressed. In re Southwestern
Bell, 235 S.W.3d at 624-25; Subaru of America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212,
221 (Tex. 2002). Whether an agency has exclusive jurisdiction is a matter of law subject to de novo
review. In re Southwestern Bell, 235 S.W.3d at 625. If an agency has exclusive jurisdiction to
resolve a dispute, a party must first exhaust administrative remedies before a trial court has subject
matter jurisdiction. Id.
Indiana Workers’ Compensation Board
            Celadon maintains that it proved as a matter of law that Indiana law applies in this case and
the Indiana Workers’ Compensation Board had exclusive jurisdiction of Martinez’s tort claims
pursuant to Indiana Code Section 22-3-4-12.1(a):
The workers’ compensation board, upon hearing a claim for benefits, has the
exclusive jurisdiction to determine whether the employer, the employer’s worker’s
compensation administrator, or the worker’s compensation insurance carrier has
acted with a lack of diligence, in bad faith, or has committed an independent tort in
adjusting or settling the claim for compensation.

Ind.Code § 22-3-4-12.1(a). This statute requires that a claimant first present his tort claims to the
Indiana Workers’ Compensation Board and obtain an adverse ruling before invoking the jurisdiction
of the courts. Sims v. United States Fidelity & Guaranty Company, 782 N.E.2d 345, 350-51 (Ind.
2003).
            As we have noted, Martinez signed an agreement which states that his employment is
“principally localized in Indiana” and that Indiana workers’ compensation law would apply to the
settlement of any claim arising out of any job related injury. Section 406.073(a) of the Texas Labor
Code expressly sanctions such an agreement: “An employee whose work requires regular travel
between this state and at least one other jurisdiction may agree in writing with the employer on the
principal location of the employment.” Tex.Labor Code Ann. § 406.073(a)(Vernon 2006).
            The agreement signed on December 2, 2001 was between Celadon’s subsidiary, Celadon
Trucking Services of Indiana, Inc., and Mario Martinez. Celadon’s workers’ compensation manager,
Audrey Manning, signed the agreement on behalf of the subsidiary, and that company is identified
in the agreement as Martinez’s employer. Likewise, in the documents filed by JWF with the Indiana
Workers’ Compensation Board, Martinez’s employer is identified as Celadon Trucking Services of
Indiana. Martinez filed suit against the parent company, Celadon Trucking Services, which he
identified in his pleadings as his employer. It is undisputed that Martinez’s claim was submitted to
the Indiana Workers’ Compensation Board and he accepted workers’ compensation benefits paid to
him for his on-the-job injury.
            The jury found that Celadon committed fraud against Martinez by falsely representing that
he had been released to light duty by his doctor. Martinez proceeded at trial on the theory that
Celadon made this false representation to force him to travel to Indiana where Martinez could be
seen by Celadon’s doctors, be subjected to a premature functional capacity evaluation, and be
terminated following settlement of his worker’s compensation claim. Martinez’s fraud allegations
amount to an assertion of bad faith on the part of Celadon in adjusting or settling his claim for
compensation. If the Indiana statute applies, it would require Martinez to have first presented his
fraud claim to the Indiana Workers’ Compensation Board and obtained an adverse ruling before
filing suit in Texas. Martinez presents four arguments why the statute does not apply here.
            First, he argues that Celadon has failed to raise any issue on appeal challenging the trial
court’s ruling that Indiana law does not apply. Celadon filed a motion requesting the application of
Indiana law but the trial court denied it. This court denied Celadon’s mandamus petition finding that
Celadon had an adequate remedy by appeal. In re Celadon Trucking Services, Inc., 162 S.W.3d 769
(Tex.App.--El Paso 2005, orig. proceeding). This Court expressly stated that the denial of
mandamus relief should not be construed as a ruling on the merits of the choice of law issue
presented by Celadon. Whether Indiana law applies is implicit in Celadon’s contention that the
Workers’ Compensation Board has exclusive jurisdiction of Martinez’s fraud claim. Finally, to the
extent Martinez contends that Celadon waived the issue by failing to raise it on appeal, the argument
is without merit. A contention that the trial court lacked subject matter jurisdiction cannot be waived
and can be raised for the first time on appeal. Alfonso v. Skadden, 251 S.W.3d 52, 55 (Tex. 2008).
            Second, Martinez relies on expert testimony to establish that the Indiana Workers’
Compensation Board does not have jurisdiction over his claims. George Coriden, a licensed Indiana
attorney who served on the Indiana Workers’ Compensation Board for several years, testified that
Indiana did not have jurisdiction over Martinez’s injury. Coriden testified that jurisdiction is based
upon the employee’s residence and where the work is actually performed. In this case, Coriden
viewed Martinez’s contact with Indiana as minimal. Further, it was his opinion that the parties could
not confer jurisdiction on the Indiana Workers’ Compensation Board by agreement. Whether the
Indiana Workers’ Compensation Board has exclusive jurisdiction of Martinez’s claims is a question
of law subject to de novo review. We are not bound by the testimony of an expert witness on the
subject but rather we are bound to apply the law. Martinez does not cite any Indiana authority
prohibiting an agreement such as this one. While Coriden testified that Martinez is an employee in
the state of Texas for workers’ compensation purposes, Texas permits an employee to agree in
writing with the employer on the principal location of the employment. Tex.Labor Code Ann. §
406.073(a).
            Third, Martinez maintains that the Indiana Workers’ Compensation Board’s exclusive
jurisdiction pursuant to Section 22-3-4-12.1(a) is triggered only “upon hearing a claim for benefits.” 
Since the Board did not conduct a hearing relative to Martinez’s claim, he reasons that the statute
does not apply. Martinez does not direct us to any authority in support of his position that the
“hearing” referred to in the statute means a hearing attended by the parties and their attorneys. The
Indiana Workers’ Compensation Act expressly provides for disputes to be resolved by a single
member of the board in a summary proceeding. See Ind.Code § 22-3-4-6 (providing that the Board
shall hear the parties at issue, their representatives and witnesses, and shall determine the dispute in
a summary manner); Rork v. Szabo Foods, 436 N.E.2d 64, 67 (Ind. 1982)(stating that workers’
compensation claims are heard and determined by a single member of the Workers’ Compensation
Board; the approach “effectuates a desirable and pragmatic goal in the administration of the
Worker’s Compensation Act-the speedy disposition of claims”); see also Davis v. Webster, 136
Ind.App. 286, 198 N.E.2d 883, 290 (Ind.App. 1964)(the Industrial Board of Indiana is an
administrative agency, not a court, and it prescribes its own procedures which are summary and
informal in nature). The statute does not precisely define what constitutes a hearing but the
Workers’ Compensation Board certainly had before it Martinez’s claim for benefits when it
considered and approved the agreements submitted to it. Further, the statute itself contemplates that
it would apply when a party settles his workers’ compensation claim as it provides for exclusive
jurisdiction over a claim of bad faith on the part of the employer in settling a claim for compensation. 
Finally, construing the statute in the manner suggested by Martinez would have inconsistent results. 
An employee who enters into a settlement of his workers’ compensation claim could maintain a tort
suit against his employer without first presenting the claim to the Workers’ Compensation Board,
but an employee whose benefits are determined by the Board following some contested proceeding
would be required to first exhaust his administrative remedies. We fail to perceive any basis for
treating the two classes of claimants differently.
            Finally, Martinez contends that Celadon was not a party to any “claim for benefits” before
the Indiana board because JWF initiated workers’ compensation proceedings only in the name of the
subsidiary, Celadon Trucking of Indiana. The Indiana Worker’s Compensation Act contemplates
that one worker may simultaneously have two employers. GKN Co. v. Magness, 744 N.E.2d 397,
402 (Ind. 2001). Further, a parent corporation and its subsidiaries are considered joint employers
of the corporation’s, the parent’s, or the subsidiaries’ employees for purposes of Indiana Code
Sections 22-3-2-6


 and IC 22-3-3-31


. Ind.Code § 22-3-6-1(a). Thus, Celadon was a joint employer
with Celadon Trucking of Indiana.
            Martinez’s petition alleges that Celadon committed fraud by falsely representing that his
doctor had released him to light duty. This allegation states the type of claim which falls within the
exclusive jurisdiction of the Indiana Workers’ Compensation Board under Section 22-3-4-12.1(a). 
Cf. Spencer v. Bridgewater, 757 N.E.2d 208, 212 (Ind.Ct.App. 2001)(In the context of the denial of
insurance claims, “a finding of bad faith requires evidence of a state of mind reflecting a dishonest
purpose, moral obliquity, furtive design, or ill will.”). Consequently, we conclude Martinez was
required to present his claims to the Indiana Workers’ Compensation Board before filing suit. 
Because he failed to do so, the trial court did not have subject matter jurisdiction of this claim. We
sustain Issue Two.
THE NEGLIGENCE CAUSE OF ACTION
            In his cross-point, Martinez asserts that the trial court erred by granting summary judgment
on his negligence cause of action. Martinez asserted Celadon breached its duty to provide him with
safe machinery and a safe place to work and the breach of these duties proximately caused the
accident and his resulting injuries. More specifically, Martinez alleged Celadon provided him with
a defective tire and rim on the vehicle, it failed to secure the tire and rim to the vehicle, it failed to
inspect the tire and rim, it failed to warn Martinez that it had not adequately secured the tire and rim,
it failed to perform preventive maintenance on the vehicle, and it failed to supervise the mechanics
and maintenance personnel. Celadon filed a motion seeking both traditional and no evidence
summary judgment on all of Martinez’s causes of action including the negligence claim. See
Tex.R.Civ.P. 166a(i).
            When reviewing a no-evidence motion for summary judgment, we must disregard all contrary
evidence and inferences, and review the evidence in the light most favorable to the non-movants.
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); Walker v. Presidium, Inc., 296
S.W.3d 687, 692 (Tex.App.--El Paso 2009, no pet.). Once the moving party specifically states the
elements as to which there is no evidence, the burden shifts to the non-movants to produce summary
judgment evidence raising a genuine issue of material fact regarding each element challenged. 
Walker, 296 S.W.3d at 692-93. If the non-movants produce more than a scintilla of evidence
regarding the challenged element, a genuine issue of material fact is raised. Id. at 693. Less than
a scintilla of evidence exists if the evidence is so weak as to create no more than a mere surmise or
suspicion. King Ranch, Inc., 118 S.W.3d at 751. However, when the evidence rises to a level that
enables reasonable minds to differ in their conclusions, then more than a scintilla of evidence exists. 
Id. If the non-movants do not produce more than a scintilla of evidence to raise a genuine issue of
material fact, the trial court “must” grant the motion. Id.; Larned v. Gateway East, Inc., 186 S.W.3d
597, 601 (Tex.App.--El Paso 2006, no pet.); see also Tex.R.Civ.P. 166a(i).
            A negligence cause of action has four elements: (1) a legal duty owed by one person to
another, (2) a breach of that duty, and (3) damages (4) proximately caused by the breach. Western
Investments, Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); D. Houston, Inc. v. Love, 92 S.W.3d
450, 454 (Tex. 2002). An employer has a duty to use ordinary care in providing a safe workplace. 
Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006); Aleman v. Ben E. Keith Company, 227
S.W.3d 304, 310 (Tex.App.--Houston [1st Dist.] 2007, no pet.). An employer must furnish safe
machinery and instrumentalities and provide adequate assistance under the circumstances for the
performance of required work. Humble Sand & Gravel, Inc. v. Gomez, 146 S.W.3d 170, 186 n.45
(Tex. 2004); Werner v. Colwell, 909 S.W.2d 866, 869 (Tex. 1995); Aleman, 227 S.W.3d at 311. An
employee suing an employer for negligence bears the burden of presenting legally sufficient evidence
that the employer required the employee to work “where a reasonably prudent employer would not
have done so.” Werner, 909 S.W.2d at 869. An employer, however, is not an insurer of its
employees’ safety. Elwood, 197 S.W.3d at 794; Aleman, 227 S.W.3d at 311. 
            Generally, courts will find sufficient proof of causation when lay testimony establishes a
sequence of events that provides a strong, logically traceable connection between the event and the
condition. Morgan v. Compugraphic Corp., 675 S.W.2d 729, 733 (Tex. 1984). Proof other than
expert testimony will constitute some evidence of causation only when a layperson’s general
experience and common understanding would enable the layperson to determine from the evidence,
with reasonable probability, the causal relationship between the event and the condition. Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 583 (Tex. 2006). Expert testimony is required when an issue
involves matters beyond jurors’ common understanding. Id. Whether expert testimony is necessary
to prove a matter or theory is a question of law. Id.
            In his summary judgment response to this issue, Martinez relied solely on his deposition
testimony in which he described the accident. Martinez testified that he heard a big “boom” and a
wheel came off of the trailer. The steering wheel started to shake and the truck pulled to the right
side of the road. Martinez could not control the truck and it struck signs along the road before hitting
the pillars or “walls” of a bridge. Martinez’s pleadings and summary judgment response assume that
the wheel coming off of the truck is what caused him to lose control of the vehicle but he did not
present any evidence to support that allegation. Even assuming that the accident was caused by the
wheel coming off of the truck, there is no evidence that it happened due either to a defect in the
wheel or because it had not been properly secured to the vehicle. Further, there is no evidence that
Celadon failed to inspect the vehicle, failed to perform preventive maintenance, or failed to warn
Martinez that the tire had not been adequately secured. Consequently, there is no evidence that
Celadon breached its duty to provide him with safe equipment or a safe workplace.
            Nor did Martinez present any evidence that Celadon’s alleged breach proximately caused his
injuries. See Aleman, 227 S.W.3d at 311 (employee seeking damages from employer in negligence
action for broken leg sustained when employee slipped and fell on ramp leading from his truck’s
trailer to the ground during a delivery produced no evidence, in opposition to no-evidence summary
judgment motion, that employer’s failure to properly maintain its trailers was the cause in fact of his
injury; although employee testified that he slipped on the ramp because his feet were wet from water
on the floor of trailer that leaked from refrigeration unit inside the trailer, such testimony was only
evidence that failure to maintain trailer caused water to be present on trailer floor, not that such a
failure caused his injury). The trial court did not err by granting summary judgment on this cause
of action. We overrule Martinez’s first cross-point. 
Dismissal or Abatement
            Having sustained Issue Two, it is unnecessary to address the remaining issues raised on
appeal by either party. We must now determine whether Martinez’s claims should have been
dismissed or if abatement is the correct remedy. If a claim is not within a court’s jurisdiction, and
the impediment to jurisdiction cannot be removed, then it must be dismissed. American Motorists
Insurance Company v. Fodge, 63 S.W.3d 801, 805 (Tex. 2001). On the other hand, if the
impediment to jurisdiction could be removed, then the court may abate proceedings to allow a
reasonable opportunity for the jurisdictional problem to be cured. Id. The time for Martinez to
pursue review of his claims by the Indiana Workers’ Compensation Board has expired. 
Consequently, the impediment to jurisdiction cannot be removed. We therefore reverse the judgment
of the trial court and render judgment dismissing Martinez’s suit for lack of jurisdiction. 




March 24, 2010                                                           
                                                                                    GUADALUPE RIVERA, Justice

Before McClure, J., Rivera, J., and Guaderrama, Judge
McClure, J., not participating
Guaderrama, Judge, sitting by assignment